**Wilfred J. WAKEFIELD,
Plaintiff-Appellant,**

v.

**NORTHERN TELECOM, INC.,
Defendant-Appellee.**

**Wilfred J. WAKEFIELD,
Plaintiff-Appellee,**

v.

**NORTHERN TELECOM, INC.,
Defendant-Appellant.**

Nos. 38, 261, Docket 86–7307, 86–7557.

United States Court of Appeals,
Second Circuit.

Argued Nov. 6, 1986.

Decided March 2, 1987.

---

Thomas M. McCaffrey, New York City, for plaintiff-appellant-appellee.

Bradley R. Brewer, New York City (Brewer & Soeiro, New York City, on the brief), for defendant-appellee-appellant.

Before LUMBARD, OAKES, and KEARSE, Circuit Judges.

KEARSE, Circuit Judge:

This case returns to us following proceedings on remand from our decision in

*Wakefield v. Northern Telecom, Inc.*, 769 F.2d 109 (1985) (*"Wakefield I"*), which granted defendant Northern Telecom, Inc. ("NTI"), a new trial on the breach of contract claim of its former employee, plaintiff Wilfred J. Wakefield. Wakefield now appeals from a judgment of the United States District Court for the Southern District of New York, Leonard B. Sand, *Judge*, summarily dismissing his complaint after further discovery on remand. Wakefield contends that the district court erred in granting summary judgment primarily because (1) this Court in *Wakefield I* had ordered a new trial, and (2) there were genuine issues of material fact as to the terms of the contract governing Wakefield's compensation and as to NTI's motivation for terminating Wakefield's employment. NTI challenges orders of the district court denying leave to file an untimely bill of costs following its successful appeal in *Wakefield I*. The appeals were consolidated for argument. For the reasons stated in Parts I and II below, we vacate the judgment dismissing the complaint and remand for trial. For the reasons stated in Part III below, we affirm the rulings as to costs.

## I. BACKGROUND

The factual background of the dispute is adequately detailed in *Wakefield I* and will be but briefly summarized here. Prior to 1978, Wakefield was a salesman for Danray, Inc. ("Danray"), a company that sold communications switching systems. Wakefield's compensation was a base salary plus commissions on sales he produced. The Danray sales incentive plan ("Danray Plan" or "Plan"), which by its terms was effective from January 1 through December 31, 1978, provided that 50% of the salesman's commission would be paid 30 days after Danray's acceptance of an order and the other 50% would be paid 30 days after the customer's acceptance of the system. The Plan also contained the following provision concerning terminated employees ("Paragraph J"):

> In order to receive incentive compensation under this Plan, the participant must be a Danray employee on the date the incentive compensation is to be paid pursuant to the Plan. It will be Danray's policy to ensure a fair, equitable and prompt payment of any incentive due an employee whose employment is terminated or who is transferred to a non-sales position.

In the plan, Danray "reserve[d] the right to modify, amend or cancel this Plan at any time."

In January 1978, Danray was acquired by NTI which also sold switching systems. NTI had a different sales incentive plan and thereafter considered modifying the two plans. In 1979, NTI adopted two new provisions concerning the payment of commissions. Wakefield contends that these two provisions superseded the Danray Plan; NTI contends that they merely modified it.

Through most of 1979, Wakefield was working on a proposed sale to IBM and other companies of switching equipment worth approximately $16 million. On October 26, 1979, NTI discharged 57 employees; one of them was Wakefield. Shortly thereafter, a contract for the anticipated sale to IBM was signed for $12 million. Invoking Paragraph J of the Danray Plan, NTI has refused to pay Wakefield any commission on the sale because he was not an employee at the time the contract was signed.

Wakefield commenced the present action, advancing various theories of recovery, of which only a breach of contract theory remains.

### A. *The First Trial and* Wakefield I

A jury trial was held on Wakefield's breach of contract claim. The court instructed the jury, *inter alia*, that it could find in Wakefield's favor if it found either that Wakefield had "substantially performed" all of his contractual obligations or that NTI "did not act in good faith" toward Wakefield. The jury returned a verdict in favor of Wakefield in the amount of $111,079.87. NTI's motions for judgment notwithstanding the verdict ("n.o.v.") or a new trial were denied, and NTI appealed.

On appeal, we noted that Wakefield advanced two theories in support of his contract claim: (1) that NTI's 1979 communications concerning modification of the sales incentive plan wholly superseded the Danray Plan and, containing no provision similar to Paragraph J, eliminated any requirement that Wakefield be an NTI employee when the commissions became payable, so long as he had procured the sale; and (2) that NTI had fired him precisely in order to avoid paying him commissions on sales that were complete but for formalities, thereby violating an implied covenant of good faith and fair dealing. We found the district court's instructions to the jury flawed because (1) Paragraph J, if not superseded, was an express contractual requirement and hence strict compliance, rather than substantial compliance, would be required in order to entitle Wakefield to commissions on sales consummated after his termination; and (2) the court's instructions on good faith dealing had been too broad and the jury should have been told that it could not find in favor of Wakefield unless it found that his termination had been substantially motivated by NTI's desire to deny him commissions and was not part of a legitimate reduction in work force or the result of dissatisfaction with him.

Noting that the dispute as to the continued viability of Paragraph J had not been submitted to the jury, and concluding that "a properly instructed jury could have awarded damages to Wakefield upon either of [his] theories described above," *Wakefield I*, 769 F.2d at 113, we remanded for a new trial. We stated that

> Wakefield may prevail in one of two ways. First, he may attempt to prove that Paragraph J of the 1978 Danray Sales Incentive Plan did not apply to some or all of the sales for which he seeks commissions, and that he substantially fulfilled the requirements of any applicable contracts to earn commissions for those sales. Second, he may attempt to prove that NTI's desire to avoid paying him commissions that were virtually certain to become vested was a substantial motivating factor in the decision to discharge him. If the discharge was oth-

erwise motivated, he may not recover on the good faith theory.

*Id.* at 114.

## B. *The Proceedings on Remand*

On remand, the parties conducted further discovery in the form of depositions of Wakefield and three NTI employees. NTI then moved for summary judgment on both the issue of whether Paragraph J had remained in effect and whether NTI's termination of Wakefield had been motivated by a desire to deny him commissions. The court granted summary judgment.

As to the Paragraph J issue, the court recounted the history of communications among NTI's vice president Edward Ray Cotten, its district manager Rocco Salerno, and Wakefield with regard to the specifics of the sales incentive plan applicable to Wakefield. Despite finding "ambiguities" and "wide latitude for confusion," the court found that there was "no question" that Wakefield's commissions had been governed by Paragraph J:

> "These various exchanges between the parties indicate wide latitude for confusion. For instance, plaintiff referred to Cotten's July 6 letter as the 1979 NTI Compensation Plan Statement, a reference that could be drawn from the language Cotten himself used (*see* Ex. J to Brewer Aff.) *and/or* plaintiff's own understanding of what new provisions governed his commissions. In fact, Cotten stated that he himself could have been referring to a 'generic NTI sales compensation plan for 1979' rather than to the NTI plan for NTI people and the Danray plan for Danray people. *See* text at 4 *supra; see also* Cotten Dep. of 12/12/85 at 86–87. When plaintiff made his inquiry to Salerno, moreover, he used commission figures that were *not* present in the 1978 Danray Plan, the only plan he allegedly had in his possession. It is not clear where plaintiff obtained the one percent (1%) commission figures he used in this letter. Even Cotten indicated this letter had led him to believe that 'maybe [Wakefield] also had the NTI plan, because in the NTI plan

it's spelled out on percentages and the Danray plan it's not spelled out.' Cotten Dep. of 12/12/85 at 89.

Despite these ambiguities, this Court must find that there is no question that plaintiff's commissions were governed by the 1978 Danry [*sic*] Plan and the subsequent modifications and, thus, no triable issue of fact related to this theory of recovery to be presented to the jury. Plaintiff's concessions at prior moments during this litigation belie any other conclusion. For example, in the pre-trial order filed on October 7, 1983, plaintiff contended that '[f]rom January 1978 until his termination on October 26, 1979, [he] *continuously* performed the duties of Large Systems Salesman for Defendant, under the terms of the January 1978 commission agreement.' (emphasis in original). In his first amended complaint (dated Nov. 25, 1981), plaintiff alleged he had 'entered into the performance of his duties in selling the products of both the Danray, Inc. division and those of the parent defendant pursuant to the agreement of January 1978.' Finally, at an earlier deposition, plaintiff identified the Danray Sales Incentive Plan as the one he had referred to as the governing commissions agreement in his first amended complaint."

Opinion dated March 18, 1986 ("March 18 Opinion"), at 6–7 (footnotes omitted) [Available on WESTLAW, DCTU database].

As to the motivation issue, the court found that Wakefield could not establish a prima facie case because at his deposition after the remand, he "explicitly ... acknowledged that the sole evidence he can present on this issue is his own subjective belief." *Id.* at 8 (footnote omitted). The court went on to say that this was "especially inadequate in light of the other reasons defendant has provided for its termination decision—a general lay-off of fifty-seven employees; plaintiff's failure to follow [his superior's] orders; etc." *Id.* (footnote omitted). The court termed it "irrelevant to the issue of defendant's motivation for termination" that both Wakefield "and his customers state that he performed the work enabling the sales to go through,"

and that NTI had paid no one commissions on those sales. *Id.*

Concluding that Wakefield had failed to "indicate that he can proffer evidence enabling him to reach the jury with his claims," *id.* at 9, the court dismissed the complaint.

## II. WAKEFIELD'S APPEAL

### A. *The Framework Established for Remand by* Wakefield I

■ Wakefield contends that *Wakefield I* mandated a new trial on his contract claim. The district court rejected this view, stating that it "d[id] not understand the Court of Appeals as ruling on whether or not plaintiff had established a *prima facie* case," March 18 Opinion at 2; the court apparently read our statement that Wakefield could "attempt to prove" that Paragraph J did not apply or that NTI was motivated by a desire to deny him commissions that were about to become vested as "clearly indicat[ing]" that plaintiff had not made out a prima facie case, *id.* Neither view is entirely correct.

The action taken by a court of appeals must be analyzed in the context of the issues before it. In *Wakefield I*, NTI challenged, *inter alia*, the district court's failure to grant it judgment n.o.v. In pursuing its contention that it was entitled to judgment as a matter of law, NTI explored at some length the trial evidence with respect to what contract governed Wakefield's right to commissions in 1979. In remanding for a new trial, we plainly rejected NTI's contentions that it was entitled to judgment as a matter of law. Far from "clearly indicat[ing]" that Wakefield had not established a prima facie case at his first trial, we stated that "a properly instructed jury could have awarded damages to Wakefield upon either of [his] theories...." 769 F.2d at 113. Thus, we clearly indicated that Wakefield had presented sufficient evidence at the first trial to withstand a motion for dismissal of his case as a matter of law. This ruling was confirmed thereafter when we denied NTI's petition for rehearing which sought to

avoid a new trial on the wrongful motivation theory on the basis that the district court had implicitly ruled that there was insufficient evidence to support that theory at the first trial.

We do not mean to suggest that if further discovery proceedings on remand had revealed an undisputed fact conclusively precluding the entry of judgment in Wakefield's favor, judgment could not have been entered against him as a matter of law. But in the absence of such a revelation, our ruling in *Wakefield I* meant that NTI was not entitled to judgment as a matter of law.

### B.  *The Motivation Issue*

■  We think it plain that NTI was not entitled to summary judgment on the issue of whether the termination was motivated solely by NTI's desire to deny Wakefield commissions to which he was about to become entitled.  Summary judgment is proper only if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, —— U.S. ——, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).  There must also be " 'no controversy as to the inferences to be drawn from' " the facts; "the court should draw all reasonable inferences against the moving party." *EEOC v. Home Insurance Co.*, 672 F.2d 252, 256–57 (2d Cir. 1982) (quoting *Schwabenbauer v. Board of Education*, 667 F.2d 305, 313 (2d Cir. 1981)).  Summary judgment is usually inappropriate when the moving party's state of mind is in issue. *EEOC v. Home Insurance Co.*, 672 F.2d at 257.

■  The district court granted NTI summary judgment on the issue of its motivation on the basis that Wakefield, at his postremand deposition, "explicitly ha[d] acknowledged that the sole evidence he can present on this issue is his own subjective belief."  March 18 Opinion at 8 (footnote omitted).  This ruling somewhat stretched the deposition testimony and unfairly ignored both the evidence adduced at the first trial and the ruling by this Court.

At his deposition, Wakefield was asked whether there was "[a]ny information outside of [his] own head that [he had] to indicate that [he was] fired to deprive [him] of commissions."  He stated that he had only his own firm belief and that no one had ever told him anything to support that belief.  This is the testimony relied on by the court, and since the question was not posed to Wakefield in terms of what evidence he could present, it seems to us unduly harsh to construe his answer as anything more than a concession that Wakefield had no *direct* evidence to support his belief.  Plainly there was circumstantial evidence to support his belief, for such evidence was in fact presented at the first trial.  That evidence included the sequence of events leading to this suit, *i.e.*, that Wakefield's superiors were aware that Wakefield was working on sales of some $16 million that were about to come to fruition;  that these included a $12 million sale to IBM which would have been the largest sale of a switch in the industry up to that time;  that Wakefield was regarded by his superiors as a capable salesman with a reputation for success;  that Wakefield had performed the work enabling the sales to go through;  that shortly after Wakefield's termination, the $12 million IBM sales agreement was signed;  and that NTI paid no one a commission on that sale.  In addition, there was evidence that prior to NTI's acquisition of Danray, Wakefield had been in competition with Salerno who thereafter became one of Wakefield's superiors, and that there was animosity between them.

Thus, the fact that Wakefield was unable to testify that anyone had told him NTI's goal was to deprive him of commissions should not have been fatal to his case as a matter of law.  Rarely, in a wrongful termination case, is the plaintiff privileged to have such direct evidence to support his claim.  Prima facie cases are usually established by circumstantial evidence that may include just such a sequence as was shown here.  To be sure, there was countervailing evidence produced by NTI that it had merely effected a general reduction in work force in the fall of 1979 and that Wakefield had been insubordinate.  On a motion for

summary judgment, however, even prior to any trial, the district court could not properly enter judgment on the basis of the inference it preferred, for choosing between competing inferences is the province of the jury. Certainly after Wakefield had been able to produce circumstantial evidence at one trial on the basis of which this Court had said that a properly instructed jury could have found in his favor, the district court was wrong to dismiss his complaint as a matter of law.

### C. *The Paragraph J Issue*

██ We conclude that the court erred also in summarily dismissing Wakefield's theory that the Danray Plan had been superseded and that Paragraph J therefore no longer was applicable. The court itself noted that the exchanges of communications created confusion and that there were therefore ambiguities in what plan was referred to in the pertinent statements by Cotten. On a motion for summary judgment, the court may not properly resolve such ambiguities in favor of the moving party. *E.g., Schwabenbauer v. Board of Education,* 667 F.2d at 313 ("In determining whether or not there is a genuine factual issue, the court should resolve all ambiguities and draw all reasonable inferences against the moving party.") The court did not apply this principle.

Nor was the fact that Wakefield may have made "concessions at prior moments during this litigation" sufficient to warrant the entry of summary judgment against him. The substance of the statements cited by the district court was that Wakefield's amended complaint alleged that Wakefield's right to commissions had been governed by the 1978 Danray agreement. This is precisely what NTI argued to this Court in *Wakefield I,* urging that Wakefield's contract claim "should have been decided and dismissed by the court as a matter of law on the basis of the clear language of the commission contract and should not have been presented to the jury at all." We remanded the contract claim for a new trial. It was not open to the district court on remand to dismiss sum-

marily on the basis of previously known evidence.

### III. NTI'S APPEAL

In connection with its successful appeal in *Wakefield I,* NTI was awarded costs. Our mandate and order awarding costs were docketed in the district court on September 10, 1985. Rule 11(a) of the Rules for the Southern and Eastern Districts of New York ("Local Rule 11(a)") provides, in pertinent part that

> within thirty (30) days after the disposition of the appeal, the party recovering costs shall file with the clerk a request to tax costs.... Any party failing to file a bill within this thirty (30) day period will be deemed to have waived costs....

NTI did not file a request to tax costs in the district court until October 25, 1985, when it moved for permission to file its bill of costs out of time.

After hearing oral argument, the district court denied the motion. Rejecting NTI's excuses that the clerk of the district court had not notified it of the entry of the order from this Court and that its counsel was unaware of the then-current version of Rule 11(a), adopted in 1984, the court found that NTI had had "ample opportunity and reason to anticipate the issuance of the mandate following the decision of the Court of Appeals." While noting that it had the power to extend NTI's time, it declined to do so, stating that "[t]he alternative ... to a reasonably rigid adherence to the deadlines and the rules is to ... nullify the rule...."

After summary judgment had been granted in its favor, NTI sought unsuccessfully to recover the costs denied it in 1985. The court allowed only costs relating to the post-remand proceedings.

NTI has appealed these decisions, arguing principally that the court abused its discretion in refusing to allow the untimely request for costs because (1) NTI's time to file its bill of costs could not start running until the clerk of the district court, pursuant to Fed.R.Civ.P. 77(d), notified NTI of the filing of the order from this Court, (2) Rule 11(a) created only a "rebuttable pre-

sumption" that NTI had waived its right to seek costs, and (3) NTI had shown "excusable neglect" for its failure to comply with the Rule. Most of NTI's contentions are frivolous.

■ Although Fed.R.Civ.P. 77(d) provides that "upon the entry of an order or judgment the clerk shall serve a notice of the entry by mail ... upon each party who is not in default for failure to appear," nothing in that Rule or in Local Rule 11(a) suggests that the failure of the clerk to serve such notice suspends the obligation of a party to meet any deadline that is measured from the time of the order itself. *See Frito-Lay of Puerto Rico, Inc. v. Canas*, 92 F.R.D. 384, 389–90 n. 2 (D.P.R. 1981). NTI points to other language in Rule 77(d) stating that the failure of the clerk to give notice of entry of a judgment does not enlarge a litigant's time to appeal from the judgment, and it argues that the proper inference from this language is that all other deadlines dating from entry of a judgment or order are automatically extended by the clerk's failure to give notice. We disagree. The sentence relied on by NTI reads, in pertinent part, as follows:

> Lack of notice of the entry by the clerk does not affect the time to appeal or relieve or authorize the court to relieve a party for failure to appeal within the time allowed....

The negative implication in this sentence is that the court retains its power to relieve a party of the consequences of his failure to observe time requirements other than the time for appeal; the proper interpretation is neither that the court is required to grant such relief, *cf. Radack v. Norwegian America Line Agency, Inc.*, 318 F.2d 538, 542 (2d Cir.1963) (lack of notice of entry of judgment "does not *ipso facto* mean" that relief under Fed.R.Civ.P. 60(b) "must, can or should" be granted), nor that those other deadlines are extended automatically.

NTI's "rebuttable presumption" argument is nonsense. Rule 11(a) sets a deadline for the filing of a bill of costs. It is not a provision that deals with factfinding or the shifting of burdens of proof.

■ Nor is there any merit to NTI's contention that the district court's denial of leave to file the bill of costs out of time was an abuse of discretion. Notwithstanding its plaint that the district court clerk did not mail it notice of entry of the orders received from this Court, NTI concedes that it knew of the decision in *Wakefield I* and that it received from this Court by mail a copy of the order denying NTI's petition for rehearing. The district court properly concluded that NTI had no excuse for not realizing that, within the meaning of Local Rule 11(a), the appeal had been "dispos[ed]" of. Certainly NTI's ignorance of the requirement of Local Rule 11(a) was no reason to disregard the deadline imposed by the Rule. NTI's explanation was that in late 1985 NTI's counsel used his 1983 edition of the Local Rules, which did not contain the 1984 amendment that introduced the 30–day requirement into Rule 11(a). We concur in the district court's view that the granting of relief on such a basis could all but nullify the time constraint imposed by the Rule.

## CONCLUSION

The orders of the district court relating to costs are affirmed. The judgment dismissing the complaint is vacated and the matter is remanded for a new trial consistent with the rulings of this opinion and *Wakefield I.*

Plaintiff shall recover his costs in No. 86–7307, in which he is appellant, and shall recover double his costs in No. 86–7557, in which he is appellee.