**Giles A. WANAMAKER, Plaintiff,**

v.

**COLUMBIAN ROPE COMPANY,
George T. Metcalf and Richard
W. Cook, Defendants.**

No. 88–CV–1135.

United States District Court,
N.D. New York.

May 19, 1989.

Edward A. Kiley, Rochester, N.Y., for plaintiff.

Hancock & Estabrook, Syracuse, N.Y., for defendants; David E. Peebles, of counsel.

## MEMORANDUM–DECISION AND ORDER

McCURN, Chief Judge.

On May 9, 1989, the court heard oral argument on a variety of motions made by defendants, Columbian Rope Company ("CRC"), George T. Metcalf, and Richard W. Cook. Following constitutes the court's decision in that regard.

### FACTUAL BACKGROUND

Prior to March, 1987, plaintiff had been employed as a vice president, general counsel and secretary of the defendant CRC. It is undisputed that on October 31, 1986, plaintiff was informed that he would be terminated effective June, 1987; at that time he was 54 years old. According to defendants, the reason for that termination was "part of an overall economic retrenchment which resulted, over a period of time, in the company going from a workforce of 70 salaried and 250 hourly employees in

1981 to 19 and 80, respectively, in its manufacturing and sales operation in 1987." Defendants' Memorandum of Law at p. 2–3. Plaintiff avers and defendants do not dispute that defendant, George Metcalf, CRC's Chairman of the Board during the relevant time frame, expressly told plaintiff that he was not terminated for cause. Wanamaker Affidavit (4/4/89) at par. 28.

While still in the employ of CRC, on March 2, 1987, plaintiff wrote a memo to CRC stating, in part:

> After research and consultation with counsel expert in the area, it is my belief that the action taken by directors to terminate my employment as explained to me violates the federal Age Discrimination in Employment Act as well as the New York Human Rights Law.
>
> I respectfully request that the directors reconsider and reverse their decisions regarding my employment.

*Id.,* Ex. 2 thereto. Upon receipt of that memo, CRC's Board voted to remove plaintiff effective March, 1987. By letter from defendant Metcalf, plaintiff was so advised and the following reason was given:

> Your memorandum has placed the Board in an awkward position. It is difficult to imagine how you can discharge your fiduciary responsibilities as Secretary and General Counsel having implied a possible claim against the Company. Given the foregoing, the Board feels that it would be a disservice to the shareholders if it were to allow you to continue as an officer and counsel of the Company.

*Id.,* Ex. 3. Despite plaintiff's termination becoming effective earlier than originally anticipated, he continued to receive salary and benefits through June, 1987, as CRC originally agreed to provide. In addition, thereafter plaintiff's salary and benefits were extended for an additional three months beyond June, 1987 at 70% of his previous rate of pay.

Plaintiff eventually commenced the present action making a variety of claims, perhaps the most significant being his claims based upon defendants' alleged violations of the federal Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* Plaintiff makes two claims under that Act; specifically he claims that defendants' violated the ADEA when they discharged him and that his early dismissal in March, 1987 was retaliatory, also in violation of the Act. Although not articulated as such, apparently plaintiff's discharge theory is that even though CRC did not hire someone to fill plaintiff's position of general counsel after his termination, it continued to use Hancock & Estabrook, as it had done prior to plaintiff's departure, to handle some of CRC's legal needs; and the partner, defendant Richard Cook, who rendered many of those legal services was approximately 37 years old when plaintiff was discharged. Therefore, plaintiff's theory seems to be that defendant Cook is his "replacement" for purposes of ADEA analysis.

## PROCEDURAL BACKGROUND

On approximately September 1, 1987, plaintiff filed with the Federal Equal Employment Opportunity Commission ("EEOC") a "Charge of Discrimination" against CRC. In that charge, plaintiff alleged that he was dismissed on the basis of age and that the request to leave in March, 1987 was simply an act of retaliation. Even though there is no place on the standard form charge for requesting that it not be filed with the SDHR, the following was typed in bold face type at the top of the charge form:

> Please do NOT file with NYS Div. of Human Rights, per discussion 8/24/87

That request was initialed by plaintiff. *See, id.* According to Ethel Titchener, a Human Rights Specialist with the SDHR, in accordance with "regular procedures" of the SDHR and the EEOC, as evidenced by the date stamp thereon, the Federal Contact Unit ("FCU") of the SDHR *"received"* plaintiff's EEOC charge on September 3, 1987. Titchener Affidavit (3/17/89) at par. 3 and Ex. A thereto (emphasis added).

When plaintiff filed his charge with the EEOC, a Worksharing Agreement was in effect between the EEOC and the SDHR. Peebles Second Supplemental Affidavit (5/1/89) at par. 3 and Ex. A. thereto. The

stated purpose of that agreement is "to provide individuals with an efficient procedure for obtaining redress for their grievances under the relevant State and Federal Laws." *Id.*, and Ex. A thereto at p. 1, par. I. With respect to charges received by the EEOC, the Worksharing Agreement expressly provides:

> EEOC will refer to the FEP Agency [SDHR] copies of all ADEA co-jurisdictional charges (verified complaints) received by EEOC. Such referrals will be made in order to protect the private action rights of charging parties under ADEA and the Human Rights Law. Each charge will be accepted by the FEP agency [SDHR] as a verified complaint. The FEP Agency [SDHR] will notify complainant in writing that the investigation of the complaint will be made by the EEOC and the FEP Agency [SDHR] will base its determination on the facts elicited by the EEOC.

*Id.*, Ex. A. thereto at p. 1 par. II(a).

On October 28, 1988, the EEOC's district director issued a determination finding that, based upon the evidence, plaintiff had not established an ADEA violation when it originally decided to terminate him. The EEOC district director did find, however, that CRC engaged in retaliation in violation of the ADEA when it forced plaintiff to leave its employ in March, 1987, several months earlier than his originally anticipated termination date.

In addition to making those findings, the district director outlined the procedures to be followed with respect to any future processing of plaintiff's charge. The director specifically advised:

> If Charging Party [plaintiff] wishes to pursue his claim in court under the ADEA, the lawsuit must be brought within two years of the alleged discriminatory act of October 31, 1986 for his notification of termination and of March 5, 1987 for the act of retaliation or within three years in cases of willful violation(s). Please be advised that Charging Party's lawsuit must be brought within these timeframes whether or not he requests a review of this determination.

*Id.* That determination was transmitted by FAX machine and sent certified mail return receipt requested to attorneys for the parties. As he was entitled to do, plaintiff sought and obtained EEOC review of the district director's determination. On December 9, 1988, the EEOC issued a determination upholding, in all respects, the determination made by the district director.

On October 28, 1988, plaintiff attempted to commence this action by filing a complaint with the clerk of the court. The complaint was delivered to the court clerk on that date, and defendants do not dispute that. It was not actually filed, however, until November, 1, 1988. The reason for that delay in filing was that the clerk's office returned the complaint on October 28, 1988, for failure to pay the statutorily required $120.00 filing fee. *See* Peebles Reply Affidavit (4/14/89) at par. 5, and Ex. A thereto.

There are five causes of action set forth in plaintiff's amended complaint. As previously mentioned, the first two are based upon alleged violations of the ADEA, arising out of plaintiff's discharge and the March, 1987 dismissal. Plaintiff also explicitly alleges three pendent state common law causes of action based upon defamation, intentional infliction of emotional distress, and breach of an implied covenant of good faith and fair dealing. Although plaintiff included a claim based upon a violation of the New York Human Rights Law ("HRL"), N.Y.Exec.Law § 290 *et seq.* (McKinney 1982 and Supp.1989), in his original complaint, such claim is *not* expressly set forth in his amended complaint; but plaintiff does incorporate by reference in his amended complaint some paragraphs of the original complaint which refer to the HRL. In addition, in his opposition papers, plaintiff states that the "primary" causes of action are based upon alleged violations of the ADEA *and* the HRL. Plaintiff's Memorandum of Law at p. 1. Thus, the court construes plaintiff's amended complaint as also stating a cause of action under the HRL.

Defendants are now moving to dismiss plaintiff's amended complaint for a host of

reasons, which will be addressed separately herein.

## DISCUSSION

### I. Statute of Limitations

■ One of the reasons urged by defendants for dismissing plaintiff's ADEA claims is that those claims are purportedly barred by the statute of limitations. The statute of limitations for an ADEA action is borrowed from the Fair Labor Standards Act. *See* 29 U.S.C. § 626(e)(1). That statute provides, in pertinent part:

> a) if the cause of action accrues on or after May 14, 1947–may be commenced within two years after the cause of action accrued, and every such action shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued; ...

29 U.S.C. § 255(a) (West 1985). As defendants correctly state, in ADEA discharge cases, "a cause of action accrues and the limitations period begins to run on the date when the employee receives a definite notice, or as a reasonable person should know, that the employer has made a decision to terminate his or her employment." Defendants' Memorandum of Law at p. 15. *See, e.g., Chardon v. Fernandez,* 454 U.S. 6, 7, 102 S.Ct. 28, 29, 70 L.Ed.2d 6 (1981); *Russo v. Trifari, Krussman and Fishel,* 837 F.2d 40, 42 (2d Cir.1988). Here it is uncontested that plaintiff was notified on October 31, 1986 that he was terminated from his job. Therefore, under § 255(a) plaintiff had until two years from that date in which to file his ADEA action, unless he is claiming a "willful" violation. In the latter situation, plaintiff would have three years from the accrual date in which to commence his ADEA action.

Defendants contend that plaintiffs' ADEA claims must be dismissed as untimely because his complaint was not filed until November 1, 1988—the day on which plaintiff paid the required filing fee to the court clerk; and in defendants' view that filing was one day after the expiration of the applicable statute of limitations. Plaintiff counters that his action was timely commenced because the complaint was filed with the court on October 28, 1988, when a delivery service employee left the summons and complaint with the Deputy–In–Charge.[1] Thus, the first issue is when was the complaint filed. If the complaint was filed on October 28, 1988, then obviously plaintiff's ADEA claims would be timely.

### A. Filing

According to Fed.R.Civ.P. 3, "[a] civil action is commenced by *filing* a complaint with the court." (emphasis added). Rule 5(e) defines filing as being accomplished when pleadings and other papers are filed with the clerk of the court. Consistent with those rules, the Second Circuit recently reiterated its position that filing means the " 'delivery [of papers] into the actual custody of the proper officer, designated by statute,....' " *Greenwood v. State of N.Y. Office of Mental Health,* 842 F.2d 636, 639 (2d Cir.1988) (quoting *In re Gubelman,* 10 F.2d 926, 929 (2d Cir.1925)). The Second Circuit has not yet had occasion, however, to address the precise issue presented here: whether an action is deemed to be commenced by simply presenting to the court clerk a complaint for filing without the statutorily required filing fee.[2]

---

1. Defendants' suggest that because the delivery service employee responsible for delivering the summons and complaint to the court is not an attorney, it was improper for plaintiff to submit his affirmation to the court. The court notes that such affirmations are ordinarily permissible under 28 U.S.C. § 1746 (West Supp.1989); however, this particular affirmation did not fully comport with the requirements of that statute in that it was not dated.

2. 28 U.S.C. § 1914 provides, in part:

The clerk of each district court *shall* require the parties instituting any civil action, suit or proceeding in such court, whether by original process, removal or otherwise, to pay a filing fee of $120,....

28 U.S.C. § 1914(a) (West Supp.1989) (emphasis added). That statutory requirement is amplified by local rule 5 which states:

The clerk shall not be required to render any service for which a fee is prescribed by statute

As defendants recognized, courts are divided on this issue. *Compare Anno v. United States,* 125 Ct.Cl. 535, 113 F.Supp. 673 (1953) (action not properly commenced by the tendering of a complaint or petition without the requisite filing fee); and *Turkett v. United States,* 76 F.Supp. 769 (N.D.N.Y.1948) (same); *with Rodgers v. Bowen,* 790 F.2d 1550 (11th Cir.1986) (tendering of filing fees is not a jurisdictional prerequisite to the filing of action and consequent commencement of action); *Wrenn v. American Cast Iron Pipe Co.,* 575 F.2d 544 (5th Cir.1978) (same); and *Lyons v. Goodson,* 787 F.2d 411 (8th Cir.1986) (same). In *Keith v. Heckler,* 603 F.Supp. 150 (E.D.Va.1985), a case heavily relied upon by defendants, after a thorough analysis of the relevant case law, the court held that an action was not filed for purposes of commencing such action until the filing fee required by 28 U.S.C. § 1914 and the local rule therein was paid. In so holding, the *Keith* court distinguished the Supreme Court's decision in *Parissi v. Telechron, Inc.,* 349 U.S. 46, 75 S.Ct. 577, 99 L.Ed. 867 (1955) (*per curiam*), upon which some courts have relied in recent years to support the proposition that payment of a filing fees is not a jurisdictional prerequisite. Specifically, in *Keith* the court persuasively explained:

> The Court believes that the *Parissi* Supreme Court decision is properly applicable to appeals from the District Court under 28 U.S.C. § 1917, and not to cases construing payment of district court fees under 28 U.S.C. § 1914. We must disagree with the statement in *Bolduc* [189 F.Supp. 640 (D.Me.1960)] that *Parissi* " 'seems clearly also to repudiate the doctrine of the *Turkett* and *Anno* cases....' " *Bolduc, supra,* at 641. *Parissi* in a one-page per curiam decision only held that lack of the fee with a notice of appeal did not warrant dismissal, and stated that: " 'Anything to the contrary in such cases as *Mondakota Gas Co. v. Montana–Dakota Utilities Co.,* 9th Cir.1952, 194 F.2d 705, we disap-

prove.' " *Parissi* expressly overruled cases holding that the fee is a positive prerequisite to proper " 'filing' " of an appeal, such as *Mondakota, supra* (notice of appeal, fee issue); *Smith v. Johnston,* 109 F.2d 152 (9th Cir.1940) (*in forma pauperis,* notice of appeal and fee issue); however, we feel it did not repudiate *Anno v. United States,* 113 F.Supp. 673, 125 Ct.Cl. 535 (1953) (district court filing fee required to commence action, pursuant to 28 U.S.C. § 1914); *Turkett v. United States,* 76 F.Supp. 769 (N.D.N.Y.1948) (district court filing fee required in advance to commence action, pursuant to 28 U.S.C. § 1914 predecessor and local rule); *cf. Oil Well Supply Co. v. Wickwire,* 52 F.Supp. 921 (E.D.Ill.1943) (fee is condition precedent to commencement of action in Illinois state court where advance fee payment statute in force).

> Besides the important difference in the statutory language of 28 U.S.C. § 1914, which permits the prepayment local rule, and § 1917, which does not, the Court makes note of significant policy considerations. Authorizing the commencement of the district court action without the required fee would breed countless administrative and procedural woes, and give to the Clerk's Office an element of discretion where none was intended. The Clerk's office would be converted into a part-time credit institution, spending significant energy collecting fees as well as extending credit. See *Turkett, supra* at 770.

> Prior to the date of a complaint's " 'filing' ", jurisdictional and procedural deadlines abound. Upon the proper " 'filing' " in the district court, these various limitations often are moot. Therefore, when an appeal is taken from a case already legitimately filed and considered, it is understandable that the lack of the $5.00 fee with a notice of appeal should not cause dismissal of the appeal under 28 U.S.C. § 1917. See *Parissi, supra. Id.* at 156–57.

This court finds that reasoning compelling; and thus determines that plaintiff's

---

or by the Judicial Conference of the United States *unless the fee for the particular service is paid to him in advance.*

(emphasis added).

complaint in the present action was not filed on October 28, 1988, because plaintiff did not tender the statutorily required filing fee to the court clerk at that time. Rather, plaintiff's complaint was filed on November 1, 1988, when the filing fee was paid to the clerk of the court. The court observes that that determination is consistent with this Circuit's definition of filing because here the summons and complaint were not delivered into the "actual custody" of the clerk on October 28, 1988, in that they were returned on that same date for failure to comply with the filing fee requirement. *See* Peebles Reply Affidavit (4/14/89), Ex. A thereto.

### B. Non–Willful ADEA Violations

Having determined that plaintiff's complaint was not filed until November 1, 1988, the court must next consider whether plaintiff's ADEA claims were timely commenced on that date. Plaintiff's ADEA claims accrued on October 31, 1986, when plaintiff received notice that CRC intended to terminate him, and the parties do not contest that. According to 29 U.S.C. § 255(a), plaintiff had 2 years from that date in which to bring his ADEA claims. That means plaintiff had until October 30, 1988 in which to commence this action. Assuming *arguendo* that plaintiff is entitled to take advantage of Rule 6(a) which provides, among other things, that if the last day for computing a period thereunder falls on a Sunday, plaintiff would have had until Monday, October 31, 1988 in which to file this action because October 30, 1988 fell on a Sunday. That one day extension does not save plaintiff's ADEA claims, however, because his complaint was not filed until November 1, 1988; and thus his claims based upon non-willful violations of the ADEA are barred by the statute of limitations.

Once again, assuming for the sake of argument the applicability of Rule 6(a), plaintiff's cause of action would have commenced running on November 1, 1986—one day after his cause of action accrued. That is so because Rule 6(a) provides, in part:

In computing any period of time prescribed or allowed by these rules, by the local rules of any district court, by order of court, or by any applicable statute, the day of the act, event, or default from which the designated period of time begins to run shall not be included.

Two years from that November 1, 1986 would have been October 31, 1988, and plaintiff's complaint was not filed by that date. Consequently, defendants' motion to dismiss as untimely plaintiff's claims based upon non-willful violations of the ADEA must be granted.

### C. "Willful" ADEA Violations

█ Plaintiff attempts to overcome his statute of limitations difficulties by asserting that the amended complaint alleges willful violations of the ADEA, which are subject to a longer three year statute of limitations. *See* 29 U.S.C. § 255(a) (West 1985). Therefore, the court must consider whether plaintiff's amended complaint contains sufficient allegations of willfulness so that plaintiff is entitled to rely upon that longer statute of limitations. It is undisputed that if plaintiff's amended complaint does in fact allege willful violations of the ADEA, that aspect of his ADEA cause of action would certainly be timely as plaintiff's complaint was filed well within three years of October 31, 1986. Defendants' assert that "the complaint falls far short of setting forth sufficient allegations to support plaintiff's contention that defendants' decision to terminate his was " 'willful;' " and thus insofar as his amended complaint states a claim for willful violation of the ADEA, that claim must be dismissed as untimely." Defendants' Memorandum of Law at p. 19.

The parties are in agreement that in this Circuit an employer's conduct is "willful" for purposes of the ADEA statute of limitations if " 'the employer knew or showed reckless disregard for the matter of whether its conduct was prohibited by the ADEA.' " *Russo*, 837 F.2d at 44 (quoting *Trans World Airlines v. Thurston*, 469 U.S. 111, 128, 105 S.Ct. 613, 626, 83 L.Ed.2d 523 (1985)). In *Pfister v. Allied Corp.*, 539 F.Supp. 224 (S.D.N.Y.1982), the defendant employer moved to dismiss plaintiff's al-

**540**

leged willful violation of the ADEA " 'for failure to allege any facts that are sufficient to state a cause of action for a *willful* violation.' " *Id.* at 228 (citation omitted) (emphasis in original). Relying upon Rule 9(b), which provides, *inter alia,* that " '[m]alice, intent knowledge and other condition of mind of a person may be averred generally,' " the court rejected defendant's argument. The court reasoned:

> Were the plaintiff required to aver condition of the mind with specificity, it would be virtually impossible to do so without presenting all the evidence bearing on the matter at length.

*Id.* The court thus concluded that because plaintiff "properly allege[d] the facts supporting his contention that he was discriminatorily terminated because of his age, and generally aver[ed] willfulness in a manner which satisfie[d] the requirements of Rule 9(b)", defendant's motion to dismiss plaintiff's cause of action based upon a willful violation of the ADEA had to be denied.

Similarly, in the present case, plaintiff's complaint does comport with the pleading requirements of Rule 9(b) with respect to willfulness. Not only does plaintiff allege facts supporting his contention that he was discriminated against in violation of the ADEA, but he also alleges that those acts were done "with knowing or reckless disregard of that Act's [ADEA] proscriptions." Amended Complaint at pars. 17 and 19. Although the court has some reservations about whether plaintiff will ultimately prevail on his claims of willful violation, his amended complaint certainly makes sufficient allegations to defeat defendants' motion to dismiss. In sum, insofar as plaintiff's amended complaint purports to state claims for nonwillful violations of the ADEA, those claims must be dismissed as time barred. But insofar as his amended complaint purports to state claims for willful violations of the ADEA, those claims are timely, and thus that aspect of defendants' motion to dismiss is denied.

## II. Compliance with 29 U.S.C. § 633(b) [3]

█ Defendants' next contention is that this court lacks subject matter jurisdiction because plaintiff failed to fully comply with the procedural prerequisites for commencing an ADEA action. There are two prerequisites to filing an ADEA action in federal court. The first is that the complainant must timely file a charge with the EEOC. 29 U.S.C. § 626(d) (West 1985). There is no dispute here that plaintiff satisfied that first procedural requirement.

It is the second procedural requirement which is at issue. Specifically, defendants contend that plaintiff never commenced a proceeding with the SDHR, as required under 29 U.S.C. § 633(b) (West 1985) of the ADEA; and therefore, his complaint must be dismissed. Plaintiff responds that because the EEOC forwarded his EEOC charge to the SDHR, which acknowledged receipt, there is no basis for defendants' motion to dismiss for lack of subject matter jurisdiction.

Section 633(b) of the ADEA provides, in relevant part:

> In the case of an alleged unlawful practice occurring in a State which has a law prohibiting discrimination in employment because of age and establishing or authorizing a State authority to grant or

---

**3.** Defendants contend that plaintiff failed to comply with the requirements of 29 U.S.C. § 633(b); in particular that plaintiff failed to file a discrimination charge with the SDHR. Based upon that alleged failure, defendants expressly moved to dismiss "based upon lack of subject matter jurisdiction and for failure to state a claim upon which relief may be granted,...." Defendants' Notice of Motion to Dismiss Plaintiff's Complaint at p. 1. The court notes in passing, however, that compliance with those statutory requirements is simply a condition precedent to filing a federal lawsuit, and *not* a jurisdictional prerequisite. *Husch v. Sza-*

*bo Food Service Co.,* 851 F.2d 999, 1003 (7th Cir.1988). *Cf. Reich v. Dow Badische Co.,* 575 F.2d 363, 370 (2d Cir.), *cert. denied,* 439 U.S. 1006, 99 S.Ct. 621, 58 L.Ed.2d 683 (1978) ("Appellant's failure to comply with Section 633(b) is a bar to maintenance of the action.") Thus, defendants improperly moved to dismiss for lack of subject matter jurisdiction on the basis that plaintiff allegedly failed to comply with § 633(b). Defendants did properly rely upon Rule 12(b)(6) as a basis for dismissal, however, and the court will consider this aspect of defendants' motion solely under that rule.

seek relief from such discriminatory practice, no suit may be brought under section 626 of this title before the expiration of sixty days *after proceedings have been commenced under the State law,* unless such proceedings have been earlier terminated:....

29 U.S.C. § 633(b) (West 1985) (emphasis added). New York has its own statutory provisions pertaining to age discrimination, as well as its own statutorily proscribed manner for processing such claims. *See* N.Y.Exec.Law § 290 *et seq.* (McKinney 1982 and Supp.1989). Therefore, New York is considered to be a "deferral" state for ADEA purposes. *Reich v. Dow Badische Co.,* 575 F.2d at 369–70.

In *Oscar Mayer & Co. v. Evans,* 441 U.S. 750, 99 S.Ct. 2066, 60 L.Ed.2d 609 (1979), the Supreme Court held that in deferral states, such as New York, an ADEA grievant must "commence" a state proceeding 60 days before federal litigation is instituted. *Oscar Mayer,* 441 U.S. at 759, 99 S.Ct. at 2073. Incidentally, that was the rule in this Circuit even prior to the Supreme Court's decision in *Oscar Mayer.* In *Reich,* the Second Circuit held that plaintiff's failure to file a complaint with the SDHR until three years after the conduct complained of and only five days prior to the commencement of his federal court action was a bar to his federal ADEA action. In so holding, the Second Circuit affirmed the district court's granting of summary judgment because of plaintiff's failure to comply with § 633(b) of the ADEA.

The threshold issue presented by this motion is whether plaintiff's filing of his EEOC charge with the EEOC, which in turn forwarded it to the SDHR, constitutes commencement of a proceeding under State law as required by 29 U.S.C. § 633(b). Defendants argue that it does not, primarily because "plaintiff Wanamaker deliberately attempted to keep the NYSDHR from reviewing his charge of discrimination by expressly instructing the EEOC *not* to file his charge with the NYSDHR." Defendants' Reply Memorandum of Law at p. 7 (emphasis in original).

In *Kaczor v. City of Buffalo,* 657 F.Supp. 441 (W.D.N.Y.1987), Judge Curtin held that the requirements of § 633(b) had been satisfied under circumstances substantially similar to those in the present case. In *Kaczor,* as in the present case, there was no dispute that the plaintiff timely filed his EEOC charge; rather the controversy arose because, as here, plaintiff himself never filed a complaint with the SDHR. Instead, plaintiff filed a timely charge with the EEOC, which according to the affidavit submitted to the court by agency representatives, followed its standard procedure after the filing of such a charge. In particular, the Federal Contact Unit ("FCU") of the SDHR, upon receiving copies of plaintiff's EEOC charges, "assigned its own case number to the charges, and forwarded the charges to the Case Control and Statistical Information Unit...." *Id.* at 445. The evidence before the court in *Kaczor* further established that, "[w]hen copies of charges were forwarded from the EEOC for dual filing purposes, the State Division of Human Rights filed the charge for the record and took no further action." *Id.* at 445.

Judge Curtin expressly rejected defendants' assertion that the procedure followed by plaintiff and the EEOC did not satisfy § 633(b) of the ADEA. Judge Curtin explained:

This type of referral system between federal and state agencies has been approved by both the Supreme Court and the United States Court of Appeals for the Second Circuit in the context of Title VII cases.... Like the ADEA, Title VII also requires filing with an appropriate state agency. In *Love v. Pullman,* [404 U.S. 522, 92 S.Ct. 616, 30 L.Ed.2d 679] the Court concluded that the referral procedure was an acceptable way to proceed, in that it both gave state agencies "a prior opportunity to consider discrimination complaints" and ensured "expedition in the filing and handling of these complaints."

.     .     .     .     .

[T]he state agency was provided with the opportunity to consider the com-

plaint, consistent with *Love,....* The State Division of Human Rights chose to act pursuant to a work-sharing agreement with the EEOC by recording the charge but leaving investigation and conciliation with the EEOC. This satisfied the requirements of the ADEA,....

*Id.* (citations and footnote omitted).

Defendants contend that *Kaczor* should not control the result in this case because it is factually distinguishable. Defendants claim that this plaintiff, unlike Mr. Kaczor, made a conscious decision not to file his EEOC charge with the SDHR. Additionally, defendants contend that in *Kaczor* the SDHR "processed" plaintiff's charge, thus giving the SDHR the opportunity to investigate and/or conciliate. Defendants claim that the SDHR did not have the same opportunity here.

Defendants further contend that because plaintiff has not established that he received written notification from the SDHR that the EEOC would be investigating his complaint, he has not met his burden of showing that he complied with the procedural requirements of § 633(b). Defendants claim that in the absence of proof of such written notification, the assumption is that the SDHR heeded plaintiff's request and did not consider the EEOC charge as dually filed.

First of all, contrary to defendants' characterization, it does not appear as though plaintiff "deliberately attempt[ed] to circumvent involving the appropriate state agency in connection with his complaint...." Defendants' Reply Memorandum of Law at p. 7–8. Indeed, the opposite appears true. Plaintiff apparently made the decision not to file a copy of his EEOC charge with the SDHR himself only after consulting with legal counsel, *see* Whittlesey Affidavit (3/21/89); and after being advised on two separate occasions by contact people at the EEOC that his charge would automatically be forwarded to the SHDR. In particular, plaintiff avers:

On or about January 29, 1987, I met with a Mrs. Ismael, a contact person at the EEOC office at 90 Church Street, New York City. I was informed that any charge of discrimination received by the EEOC is automatically sent to the New York State Human Rights Division (DHR) as a matter of practice. The two agencies decide which will handle a particular case.

Wanamaker Affidavit at par. 40. Plaintiff further avers, "On or about August 24, 1987, I was again told by a contact person at the EEOC that a copy of any charge would be forwarded to the DHR." *Id.* at par. 42. Certainly that conduct does not manifest any attempt by plaintiff to "circumvent" involving the SDHR with his complaint.

Second, although plaintiff's position certainly would have been bolstered by the submission of written notification given to him by the SDHR in accordance with the Worksharing Agreement, there is ample proof before the court that plaintiff's EEOC charge was received by the SDHR. As previously mentioned, a Human Rights Specialist with the SDHR specifically averred:

[P]laintiff's EEOC charge dated March 17, 1987 was in fact *received* by the FCU of the DHR on September 3, 1987, *according to regular procedures of the DHR and EEOC.*

Attached hereto as Exhibit A is a copy of Plaintiff's EEOC charge ..., bearing the receipt stamp of the FCU dated September 3, 1987, indicating its receipt by the DHR on that date.

Titchener Affidavit (3/17/89) at pars. 3 and 4 (emphasis added). Consequently, because by filing his EEOC charge with the EEOC, which in the normal course of its business, in turn forwarded it on to the SDHR, plaintiff has commenced a proceeding with the SDHR for § 633(b) purposes. That is especially so in light of 29 C.F.R. § 1626.10(c) which unequivocally states, in part, "Charges received by one agency under the agreement shall be deemed received by the other agency for purposes of § 1626.7 [timeliness of charge]." The plain language of that regulation combined with the proof before the court that the SDHR did actually receive plaintiff's EEOC charge establishes that plaintiff has com-

plied with § 633(b). Defendants' motion to dismiss based upon plaintiff's alleged failure to comply with § 633(b) is therefore denied.

### III. Individual Defendants

■ The individual defendants offer several reasons as to why they are not properly named defendants to plaintiff's ADEA claims. One reason offered by both individual defendants is that they were not named in the EEOC charge, and therefore the complaint should be dismissed against them. Before considering the merits of that contention, a careful examination of the EEOC charge is necessary. The last paragraph of that charge specifically states:

[I] charge Columbian Rope Company *and its Directors* with a willful violation of the Age Discrimination in Employment Act of 1967 as amended and of the New York State Human Rights Law.

Defendants' Ex. A (emphasis added). Defendants Metcalf and Cook were directors of CRC during the relevant time period. In addition, Messrs. Metcalf and Cook are mentioned by name throughout the charge. It is impossible to tell from the record before the court at this juncture, however, whether the individual defendants were served with formal notice of plaintiff's EEOC charge. Presumably they had some sort of notice as CRC's attorney, Dave Peebles, represents the individuals as well; and he received a copy of the EEOC's initial determination and a copy of the review of that determination.

It is well settled that "[b]efore initiating an age discrimination suit, a plaintiff is ordinarily required to name each defendant in charges filed with the EEOC and the NYSDHR." *Rio v. Presbyterian Hosp. In City of New York,* 561 F.Supp. 325, 326 (S.D.N.Y.1983) (and cases cited therein). The purpose of that requirement is to "ensure[ ] that each defendant has knowledge of the claims and an opportunity to resolve the dispute amicably before litigation." *Id.* at 326. Therefore, in *Rio* the court held that because there was no evidence in the record that one of the defendant's "had knowledge of the pendency of the adminis-

trative proceedings or an opportunity to participate in attempted resolution of plaintiff's claim," his motions to dismiss and for summary judgment on that basis were denied. *Id. See also, Wasilchuk v. Harvey's Wagon Wheel, Inc.,* 610 F.Supp. 206, 208–09 (D.Nev.1985) (dismissal inappropriate where factual record insufficient for court to determine "whether any particular defendant, who was not named in the EEOC charge, participated in employment decisions, had actual notice of the EEOC charge and had an opportunity to participate in an attempted resolution of it").

Applying those rules to the present case, the motion to dismiss by the individual defendants based upon the fact that they were not named in the EEOC charge should be denied without prejudice to renew. The reason for such denial is that the record is insufficient at this point for the court to make the necessary determinations; that is (1) whether defendants Cook and Metcalf knew of the pendency of the EEOC proceedings or (2) whether they had the chance to participate in an attempted resolution of plaintiff's claim. Without that information, the court is not in a position to rule on this aspect of the individual defendants' motion.

#### A. Defendant Cook

■ An additional reason defendant Cook offers for dismissing the complaint as against him is that he claims that the only allegations against him are that he "replaced" plaintiff in rendering legal services for CRC, and that conduct does not give rise to liability under the ADEA. In support of his position, defendant Cook relies exclusively upon *Smith v. Sentry Insurance,* 674 F.Supp. 1459 (N.D.Ga.1987), wherein the court held, *inter alia,* that one of the defendants was not acting as an agent within the meaning of § 630(b) where he happened to be selected over plaintiff for promotion. *Id.* at 1465.

Likewise, in the present case, defendant Cook is not a party to plaintiff's ADEA claims because the only allegations against him in the complaint (either the original or the amended version) are that he replaced

plaintiff. Although there is an allegation that defendant Cook became a director on approximately January 16, 1985, there is nothing in the complaint that he engaged in either the initial decision to terminate plaintiff or the decision to dismiss him in March, 1987. Further, there are no allegations in the amended complaint that defendant Cook was acting as an agent of CRC. Therefore, defendant Cook's motion to dismiss plaintiffs' ADEA claims against him should be granted on the basis that there are insufficient allegations in the amended complaint to show that he has any liability under the ADEA.

Although an employer's agent may be held liable under the ADEA, *see*, 29 U.S.C. § 630(b) (West 1985), as just stated, there are no allegations in the amended complaint that defendant Cook was acting as CRC's agent. Plaintiff did submit the affidavit of Mark Davidson, former antitrust counsel for CRC, wherein he averred:

> [D]efendant Cook in all dealings with me represented himself as the Board's counsel, as well as Columbian's general representative, and discharged those duties previously acquitted by Plaintiff.

Davidson Affidavit (3/22/89) at par. 7. While plaintiff may be able to prove defendant Cook was an agent of CRC within the meaning of § 630(b), through the use of Mr. Davidson's affidavit or actual testimony from him, the fact remains that those agency allegations cannot be found in the amended complaint. As the Supreme Court has stated, a court may assume that a party can prove the facts alleged in a complaint; "[i]t is not, however, proper to assume that [a party] can prove facts that it has not alleged...." *Assoc. Gen. Contractors of Cal. v. Cal. St. Council*, 459 U.S. 519, 526, 103 S.Ct. 897, 902, 74 L.Ed.2d 723 (1983). Thus, Mr. Davidson's affidavit cannot be used here to overcome the deficiencies in plaintiff's amended complaint.

### B. Defendant Metcalf

Defendant Metcalf contends that plaintiff's ADEA claims should be dismissed against him as well because the only allegation in the amended complaint specifically pertaining to him is that he delivered a notice of termination to plaintiff. Defendant Metcalf further contends:

> The complaint in this instance contains no such allegations that defendant Metcalf engaged in *any* activities regarding plaintiff's employment much less that he engaged in any *discriminatory* activities with respect to plaintiff's employment.

Defendants' Memorandum of Law at p. 22. Defendant Metcalf's position is well taken; therefore, his motion to dismiss the ADEA claims as against him should be granted. Once again, plaintiff's response that a letter from Mr. Metcalf to shareholders (dated 4/30/87) shows that he "speaks for the Company ... as he purports to represent the Company to the shareholders in every meaningful way," and cannot save him in light of his facially deficient amended complaint. *See* Plaintiff's Memorandum of Law at p. 19.

### IV. Pendent State Law Claims

Defendants next argue that plaintiff's pendent state common law claims must be dismissed for various reasons. Plaintiff's response is that these motions should be denied as premature because "the discovery process has not yet begun." Plaintiff's Memorandum of Law at p. 21. Plaintiff then suggests that once there has been an opportunity for discovery, defendants could make a motion for summary judgment on those causes of action. As discussed herein and as defendants responded, the grounds for dismissal asserted by defendants are proper under Rule 12(b)(6) and thus, there is no need for discovery for the court to decide these motions.

### A. Defamation

#### 1. Timeliness

With respect to plaintiff's defamation claim, defendants first argue that it should be dismissed in its entirety because it is time-barred. The only significant allegation in plaintiff's amended complaint regarding his defamation cause of action is found at paragraph 21, which reads:

> All of the defendants have defamed plaintiff Giles A. Wanamaker by speak-

ing and/or writing or circulating malicious, untrue and damaging comments about his job performance.

Nowhere in the amended complaint are there any allegations as to when the alleged defamatory remarks were made; although presumably such remarks, if any, were made prior to plaintiff's dismissal in March, 1987.

In New York a plaintiff has one year in which to commence a defamation action. N.Y.Civ.Prac.L. & R. § 215(3). Thus, as defendants correctly pointed out, because the complaint herein was not filed until November 1, 1988, any defamation claims arising from remarks allegedly made one year prior to that date are time barred.

### 2. Merits

Defendants also argue that assuming the timeliness of plaintiff's defamation claim, it should be dismissed for failure to state a claim upon which relief may be granted because "it makes no reference whatsoever to the defamatory acts or words complained of." Defendant's Memorandum of Law at p. 25. In *Kelly v. Schmidberger*, 806 F.2d 44 (2nd Cir.1986), the Second Circuit held that plaintiffs were no longer required to plead a defamation action "*in haec verba*" ("in these words"). *See Law Firm of Daniel P. Foster v. Turner Broadcasting*, 844 F.2d 955, 958 n. 3 (2nd Cir.1988) ("The '*in haec verba*' requirement, ..., is no longer the rule in this circuit.") The Court in *Kelly* reasoned that such specificity was not required under the liberal pleading allowed by Fed.R.Civ.P. 8. The Court then stated:

> The test of a complaint's sufficiency is whether it is detailed and informative enough 'to enable defendant to respond and to raise the defense of res judicata if appropriate.... The central concern is that the complaint 'afford defendant sufficient notice of the communications complained of to enable him to defend himself.'

*Id.* at 46 (citations omitted).

Application of those guidelines to plaintiff's amended complaint mandates the conclusion that it is woefully lacking in the requisite specificity—even under the most liberal rules of pleading. As defendants persuasively contend:

> [P]laintiff fails to refer to any statements which he alleges to be defamatory. His defamation claim consists solely of the vague, conclusory statement that defendants defamed him by speaking *or* writing *or* circulating malicious, untrue and damaging comments about his job performance. Plaintiff does not specify who made the comments, does not specify when they were made, fails to allude to the context in which they are alleged to have been made, significantly does not indicate whether or when they were communicated to a third party, does not allege whether they were written or oral, and does not set forth in any manner whatsoever the words which he claims are actionable so as to give defendants notice of the statements at issue.

Defendants' Memorandum of Law at p. 26–27. For all of those reasons, defendants' motion to dismiss plaintiff's defamation cause of action is granted.

In sum, plaintiff's defamation cause of action should be dismissed in its entirety. Insofar as plaintiff's amended complaint alleges defamatory remarks prior to November 1, 1987, those claims are time barred; and any defamatory remarks made after November 1, 1987 must be dismissed for failure to state a claim upon which relief may be granted.

### B. Intentional Infliction of Emotional Distress ("IIED")

█ A claim for IIED is subject to a very strict legal standard. Defendants' conduct must be " 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.' " *Martin v. Citibank, N.A.*, 762 F.2d 212, 220 (2d Cir.1985) (quoting *Fischer v. Maloney*, 43 N.Y.2d 553, 558, 402 N.Y.S.2d 991, 373 N.E.2d 1215 (1978) (quoting Restatement (2d) Torts § 46(1)). The only allegation to support plaintiff's IIED claim here is that he was discharged; such an allegation falls

substantially below the strict standard applicable to IIED claims. Consequently, defendants' motion to dismiss plaintiff's IIED claim is granted. See George v. Hilaire Farm Nursing Home, *622 F.Supp. 1349, 1354–1355 (S.D.N.Y.1985) ("Where conduct is not sufficiently egregious to meet this yardstick, the claim must be dismissed.")*

### C. Implied Covenant of Fair Dealing and Good Faith

■ In his fifth cause of action plaintiff alleges that defendants "breached their obligation to deal with Giles A. Wanamaker in good faith." Amended Complaint at par. 25. But because plaintiff did not indicate in that cause of action, or anywhere in the amended complaint for that matter, any express promise made by any of the defendants to deal with him in good faith, presumably he is alleging an implied covenant of good faith and fair dealing. New York does not recognize such an implied covenant in employment contracts, however. *Sabetay v. Sterling Drug, Inc.*, 69 N.Y.2d 329, 335, 514 N.Y.S.2d 209, 506 N.E.2d 919 (1987); *Murphy v. American Home Products Corp.*, 58 N.Y.2d 293, 304–05, 461 N.Y.S.2d 232, 448 N.E.2d 86 (1983). *See also Wakefield v. Northern Telecom, Inc.*, 769 F.2d 109 (2d Cir.1985), *modified on other grounds*, 813 F.2d 535 (2d Cir.1987). Therefore, in the absence of an express contract by defendants to deal with plaintiff fairly and in good faith, defendants' motion to dismiss that cause of action is also granted.

### D. Human Rights Law

Although not well pleaded, it does appear as though plaintiff is also alleging a cause of action based upon the HRL in his amended complaint. Defendants assert that "if the court finds that plaintiff has fulfilled his ADEA administrative filing obligations," as it has so found, this claim must be dismissed for failure to state a claim upon which relief may be granted, based upon election of remedies.

N.Y.Exec.Law § 297(9) states, in relevant part:

Any person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of appropriate jurisdiction for damages and such other remedies as may be appropriate *unless such person had filed a complaint hereunder ..., provided that, where the Division has dismissed such complaint on the grounds of administrative convenience, such person shall maintain all rights to bring suit as if no complaint had been filed.*

N.Y.Exec.Law § 297(9) (McKinney 1982) (emphasis added). As Judge Curtin explained in *Kaczor v. City of Buffalo*, 657 F.Supp. 441 (W.D.N.Y.1987):

[N]ew York courts have held that plaintiffs who first file with the State Division of Human Rights or with a local agency lose their right to proceed *de novo* in a judicial forum. Once a complaint is filed with a state agency, the plaintiff is deemed to have selected his remedy and must proceed through the administrative procedures. He may ultimately seek review in the New York State Supreme Court, Appellate Division.... He may not withdraw his administrative complaint and turn to the courts. The only exception to this rule is a dismissal of the complaint by the agency on the ground of administrative convenience ...

*Id.* at 446. After careful analysis, however, Judge Curtin held "[t]hat the plain language of action 297(9) makes the bar to court action applicable only when the plaintiff himself files with the state agency, and not when a third party (*i.e.,* the EEOC) files on his behalf." *Id.* at 447. This court is in agreement with Judge Curtin's sound analysis and finds that because plaintiff did not file his EEOC charge with the SDHR himself, the § 297(9) bar is not triggered. Therefore, insofar as plaintiff's amended complaint purports to state a claim based upon the HRL, that claim still stands; and defendants' motion to dismiss based on the election of remedies is denied.

### E. Compensatory and Punitive Damages

■ Plaintiff is seeking by way of damages, *inter alia*, compensatory damages for mental anguish, emotional distress, damage to reputation and punitive damages. Defendants are seeking to have those damage claims dismissed. As defen-

dants rightly state, those types of damages are not recoverable under the ADEA. *Johnson v. Al Tech Specialties,* 731 F.2d 143, 147 (2d Cir.1984). Therefore, defendants' motion to dismiss those damages claims with respect to plaintiff's remaining ADEA claim is granted.

Accordingly, it is hereby ordered that:

(1) defendants' motion to dismiss as untimely plaintiff's claims of non-willful violations of the ADEA is granted;

(2) defendants' motion to dismiss as untimely plaintiff's claims of willful violations of the ADEA is denied;

(3) defendant Richard W. Cook's motion to dismiss as against him is granted;

(4) defendant George T. Metcalf's motion to dismiss as against him is granted;

(5) defendants' motion to dismiss plaintiff's pendent state law claims is granted, except insofar as plaintiff's amended complaint states a claim based upon the New York Human Rights Law; and

(6) defendant's motion to dismiss plaintiff's claims for compensatory and punitive damages is granted insofar as plaintiff is seeking to recover those damages under the ADEA.

IT IS SO ORDERED.