**Walter L. KACZOR, Plaintiff,**

v.

**The CITY OF BUFFALO, a Municipal Corporation; and James D. Griffin, in his capacity as Mayor of the City of Buffalo; John B. Myers, in his capacity as Police Commissioner, City of Buffalo Police Department; and Michael L. Broderick, Anthony J. Colucci, and Paschal C. Rubino, in their capacities as Commissioners, City of Buffalo Civil Service Commission, Defendants.**

No. CIV–84–1117C.

United States District Court,
W.D. New York.

April 7, 1987.

William A. Price, Buffalo, N.Y., for plaintiff.

Samuel F. Houston, Corp. Counsel of the City of Buffalo (Russell Sciandra, and Rosemary Gavigan Bis, of counsel), Buffalo, N.Y., for defendants.

CURTIN, Chief Judge.

Plaintiff Walter Kaczor, a retired City of Buffalo Police Officer, brought this action against the City of Buffalo and certain of its officers in their official capacities, claiming that he has not been reinstated as a police officer due to his age. Plaintiff alleged that defendants' actions violated his rights under the Age Discrimination in Employment Act [ADEA], 29 U.S.C. § 621, *et seq.*, and the New York State Human Rights Law, NYExec.Law § 296.

A trial was held, and on October 24, 1986, the jury found that the defendants willfully discriminated against plaintiff on the basis of his age, in violation of federal and state law. Defendants have filed several post-trial motions involving the sufficiency of the evidence, jurisdictional issues, and the jury's computation of damages. Oral argument was held on these motions on February 20, 1987.

The following facts emerged at trial. Mr. Kaczor was born on October 31, 1931, and was 54 years old at the time of trial. On January 2, 1982, he retired from the Buffalo Police Department, where he had served for 25 years, to accept a position as a security guard with a private company. Shortly thereafter, the company closed, and Mr. Kaczor was out of work.

In April of 1982, Mr. Kaczor wrote a letter to then Police Commissioner James B. Cunningham, requesting reinstatement, for which there was a provision in Buffalo Civil Service Commission rules. Plaintiff wrote a second letter in May of that year. On May 26, 1982, Commissioner Cunningham wrote to the Civil Service Commission advising that he had approved the reinstatement of Mr. Kaczor and asking the Commission to certify him. Plaintiff passed the required physical, and the Administrative Director of the Civil Service Commission sent a letter to Commissioner

Cunningham approving Mr. Kaczor's reinstatement.[1]

A short time later, plaintiff was advised that there was some further paperwork to be completed and was told to speak with Richard Planavsky, Commissioner of Administration and Finance for the City of Buffalo. Mr. Planavsky told plaintiff that a "personnel requisition" had to be completed before he could be reappointed. Plaintiff was never reinstated.

Plaintiff testified that he next saw Commissioner Planavsky at a political rally in the summer of 1983. Mr. Kaczor testified that, in response to his question as to why he had not been rehired, Commissioner Planavsky responded: "I could hire two for the price of you." Planavsky denied making this statement.

As Commissioner of Administration and Finance, Mr. Planavsky is responsible for preparing the City's annual budget and for overseeing labor relations. He reports to the Mayor. When a department, such as the Police Department, is planning to hire someone, a personnel requisition form is submitted to Commissioner Planavsky's office. After review, Commissioner Planavsky makes a recommendation to the Mayor. Planavsky testified that he recommended against Mr. Kaczor's reinstatement, but not on the basis of age. According to Planavsky, his decision was based upon other considerations, such as Civil Service requirements and concern that rehiring Mr. Kaczor could set a bad labor precedent.

At trial, plaintiff took the position that he was not reinstated due to his age and the economic incentive to the City to hire younger individuals. Plaintiff also produced evidence of economic saving associated with hiring younger individuals who started at a lower salary and who were entitled to fewer benefits than were veteran officers.

The jury found that defendants discriminated against Mr. Kaczor on the basis of his age and that the discrimination was willful so as to entitle Mr. Kaczor to liquidated damages. The jury answered a series of questions as to damages, finding that no jobs held by plaintiff from 1982 to 1986 should be used in mitigation of the damages, and that plaintiff was entitled to be reimbursed for his insurance expenses. They also found, under New York State Human Rights law, that plaintiff should be awarded damages for mental anguish and humiliation in the amount of $200,000.00 (*see* Verdict Sheet, Item 21). The precise calculation of back pay and lost benefits was left to the court and the parties, as is the question of reinstatement/front pay. 29 U.S.C. § 626(b).

## DEFENDANTS' POST–TRIAL MOTIONS

### 1. Motions for Judgment Notwithstanding the Verdict

■ Defendants have moved for judgment notwithstanding the verdict as to the jury's findings on liability and willfulness. In considering these motions, the evidence must be viewed in the light most favorable to Mr. Kaczor. A motion for judgment *n.o.v.* shall be granted only if, without weighing the credibility of the witnesses or the weight of the evidence, the court concludes that the evidence is such that reasonable people could not have reached the verdict which was rendered. *Simblest v. Maynard*, 427 F.2d 1, 4 (2d Cir.1970); *Fiacco v. City of Rensselaer, New York*, 783 F.2d 319, 328–29 (2d Cir.1986).

### (a) Liability

■ There was ample evidence to support the jury's verdict as to liability. Plaintiff's testimony as to Commissioner Planavsky's statement about hiring two for the price of one provided direct evidence of age discrimination. Although Planavsky denied making these comments, this was an issue of credibility solely for the jury. There was also evidence that the City was concerned with reducing personnel costs, that the City saves by hiring individuals with no seniority as opposed to veterans, and that rookies were hired to fill vacancies while plaintiff was not reinstated.

---

**1.** Police Commissioner Cunningham passed away sometime before this case came to trial.

Although defendants offered evidence of other reasons for the failure to reinstate plaintiff, the jury could have reasonably found that age was a "but for," determining factor in the decision not to reinstate plaintiff. *Hagelthorn v. Kennecott Corp.,* 710 F.2d 76, 83 (2d Cir.1983). Defendants' motion for judgment *n.o.v.* on this ground is denied.

### (b) Willfulness

Defendants also move to set aside the jury's finding that the discrimination against Mr. Kaczor was willful. The ADEA provides for the payment of liquidated damages if the violation is willful. 29 U.S.C. § 626(b). Since the jury found that there was willfulness, Mr. Kaczor is entitled to recover double for lost wages and other benefits. 29 U.S.C. §§ 216(b) and 626(b).

■■■ A violation of the ADEA is willful if the employer knew or showed reckless disregard for whether its conduct was prohibited by the ADEA. *Trans World Airlines Ins. v. Thurston,* 469 U.S. 111, 128–29, 105 S.Ct. 613, 625–26, 83 L.Ed.2d 523 (1985). The jury was instructed as to this standard. Its verdict is supported by the evidence.

At the time of trial, Commissioner Planavsky had two years' experience as Commissioner of Administration and Finance, one year as an aide to the Mayor of the City of Buffalo, and one year as Labor Relations Commissioner for the City. (Transcript, Vol. 4, pp. 9, 44, 62, and 71.) When questioned about his familiarity with age discrimination laws, Planavsky testified:

I was aware generally that you're not supposed to discriminate in certain areas. I was not familiar with the specific law, specifically what was written as far as age discrimination....

Transcript, Vol. 4, p. 82. The issue of Commissioner Planavsky's credibility was for the jury. Furthermore, a finding of willfulness does not depend upon a showing that a defendant acted with a specific intent to violate the Act. *Thurston,* 469 U.S. at 126, n. 19, 105 S.Ct. at 624, n. 19.

Viewed in the light most favorable to plaintiff, or even from a neutral stand point, the evidence permitted a finding that, given Commissioner Planavsky's background and his failure to fully investigate the law despite the resources available to him as an official in City government, he either knew that his conduct violated the ADEA or acted with reckless disregard as to whether his conduct violated the Act. *Thurston, supra.* This finding is further bolstered by the direct evidence of intentional discrimination in this case.

Counsel for the City cites *Dreyer v. Arco Chemical Co.,* 801 F.2d 651 (3d Cir.1986), for the proposition that a more stringent standard of willfulness (*i.e.,* a showing of outrageous conduct), should be applied in cases in which the employer's action is directed at a particular individual, as opposed to the adoption of a broad-based policy which has a discriminatory effect. Such a standard is too strict and is essentially equivalent to the "intentional violation" standard rejected by the Court in *Thurston,* 469 U.S. at 126, n. 19, 105 S.Ct. at 624, n. 19. *See Lindsey v. American Cast Iron Pipe Co.,* 810 F.2d 1094 (11th Cir. 1987).

Defendants' motion for judgment *n.o.v.* on the issue of willfulness is denied.

### 2. Motions to Dismiss on Procedural and/or Jurisdictional Grounds

### (a) The ADEA Claim

Defendants claim that plaintiff failed to comply with the procedural requirements of the ADEA, mandating dismissal of his cause of action under the ADEA. Defendants' post-trial motion is the first time this issue was raised.

Before an action is brought, an individual must file a charge with the Equal Employment Opportunity Commission [EEOC]. 29 U.S.C. § 626(d). It is not disputed that Mr. Kaczor filed a timely charge with the EEOC (Plaintiff's Exh. 8). In addition, if an individual resides in a state which has laws prohibiting discrimination, the ADEA requires that proceedings be commenced in accordance with that state's laws before an

action is brought. Since New York has its own age discrimination laws, it is a "deferral state" under 29 U.S.C. § 633(b). In this case, Mr. Kaczor himself never filed a complaint with an appropriate state agency. The EEOC, acting pursuant to a work-sharing agreement, sent a copy of Mr. Kaczor's complaint to the New York State Division for Human Rights.

The parties are in essential agreement as to the procedures followed in Mr. Kaczor's case, as was set forth in affidavits from agency representatives. The EEOC follows a standard procedure when a charge is filed. A clerical worker sets up a file and, within ten days, forwards a copy of the charge to both the employer and the New York State Division of Human Rights. The cross-filing with the State Division of Human Rights is automatic, and is done to fulfill ADEA requirements. The complainant is not given a choice as to whether the charge is filed with the state agency. The filing is mandatory under EEOC regulations (*see* 29 CFR § 1601.13) and the work-sharing agreement with the New York State Division of Human Rights. According to the terms of the work-sharing agreement, the agency which first receives the charge investigates and conciliates the charge. This same procedure was followed in 1983, when Mr. Kaczor filed his charge with the EEOC. *See* Affidavit of Kathleen L. Jackson, EEOC Specialist who investigated Mr. Kaczor's complaint (Item 25, Exh. B).

The Federal Contact Unit of the New York State Division of Human Rights received copies of plaintiff's EEOC charges, assigned its own case numbers to the charges, and forwarded the charges to the Case Control and Statistical Information Unit, where they were received on December 20, 1983. In 1983, when copies of charges were forwarded from the EEOC for dual filing purposes, the State Division of Human Rights filed the charge for the record and took no further action. *See*

Affidavit of Richard E. Clark, Regional Director of the New York State Division of Human Rights (Item 32).

This type of referral system between federal and state agencies has been approved by both the Supreme Court and the United States Court of Appeals for the Second Circuit in the context of Title VII cases. *Love v. Pullman*, 404 U.S. 522, 92 S.Ct. 616, 30 L.Ed.2d 679 (1972); *New York Gaslight Club v. Carey*, 447 U.S. 54, 64, 100 S.Ct. 2024, 2031, 64 L.Ed.2d 723 (1980); and *Voutsis v. Union Carbide*, 452 F.2d 889, 892 (1971), cert. denied, 406 U.S. 918, 92 S.Ct. 1768, 32 L.Ed.2d 117 (1972). Like the ADEA, Title VII also requires filing with an appropriate state agency.[2] In *Love v. Pullman*, the Court concluded that the referral procedure was an acceptable way to proceed, in that it both gave state agencies "a prior opportunity to consider discrimination complaints" and ensured "expedition in the filing and handling of these complaints." *Love*, 404 U.S. at 526, 92 S.Ct. at 619.

▮ Defendants contend that the procedure followed in this case, in which the State Division of Human Rights simply filed Mr. Kaczor's charges for record-keeping purposes with no review of its own, is not enough to satisfy the requirements of the ADEA. However, the state agency was provided with the opportunity to consider the complaint, consistent with *Love, supra*. *See also Oscar Mayer & Co. v. Evans*, 441 U.S. 750, 764, 99 S.Ct. 2066, 2075, 60 L.Ed.2d 609 (1979). The State Division of Human Rights chose to act pursuant to a work-sharing agreement with the EEOC by recording the charge but leaving investigation and conciliation with the EEOC. This satisfied the requirements of the ADEA, 29 U.S.C. § 633(b).

#### (b) The Claim under New York State Human Rights Law

Defendants also challenge this court's jurisdiction over plaintiff's pendent state

---

**2.** Although both Title VII and the ADEA contain provisions mandating filing with an appropriate state agency, Title VII is more restrictive. Under Title VII, a charge must be filed with the state agency 60 days before it is filed with the EEOC. 42 U.S.C. § 2000e–5(c). The ADEA re-

quires that the charge be filed with the EEOC 60 days before the lawsuit is brought. 29 U.S.C. § 633(b). Under the ADEA, the charges may be filed concurrently with the state agency and the EEOC.

claim under the New York State Human Rights law, Exec.Law § 296. The standard of proof for the state law claim mirrors that of the standard of proof for the ADEA claim. For the most part, the remedies are the same under both federal and state law. The exception is recovery for emotional distress, which is prohibited under the ADEA, but permitted under New York Exec.Law § 296. *Johnson v. Al Tech Specialties Corp.*, 731 F.2d 143, 147 (2d Cir. 1984); *see Cullen v. Nassau County Civil Service Commission*, 53 N.Y.2d 492, 496, 442 N.Y.S.2d 470, 472, 425 N.E.2d 858, 860 (1981); *Batavia Lodge No. 196 v. New York State Division of Human Rights*, 35 N.Y.2d 143, 145–46, 359 N.Y.S.2d 25, 316 N.E.2d 318 (1974).

Defendants failed to raise the jurisdictional issue before trial or even during the course of the trial. A question regarding jurisdiction over the state law claim first arose during discussion of the jury charges. It was agreed to let the jury pass upon the issue, and to permit the parties to brief the jurisdictional issues after trial. The jury awarded Mr. Kaczor damages for emotional distress, an award which may stand only if this court had jurisdiction over plaintiff's pendent state law claim.

In determining whether there is jurisdiction over plaintiff's pendent state law claim, this court must follow New York law. The sticking point is an election of remedies provision in the NYExec.Law § 297(9), which provides:

> Any person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of appropriate jurisdiction for damages and such other remedies as may be appropriate, unless such person had filed a complaint hereunder [with the State Division for Human Rights], or with any local commission on human rights ... [unless] the division has dismissed such complaint on the grounds of administrative convenience.

In accordance with this provision, New York courts have held that plaintiffs who first file with the State Division of Human Rights or with a local agency lose their right to proceed *de novo* in a judicial forum. Once a complaint is filed with a state agency, the plaintiff is deemed to have selected his remedy and must proceed through the administrative procedures. He may ultimately seek review in the New York State Supreme Court, Appellate Division. NYExec.Law § 298. He may not withdraw his administrative complaint and turn to the courts. The only exception to this rule is a dismissal of the complaint by the agency on the grounds of administrative convenience. *See Emil v. Dewey*, 49 N.Y.2d 968, 428 N.Y.S.2d 887, 406 N.E.2d 744 (1980).

The election of remedies provision of New York Human Rights law is frequently at odds with the federal scheme, which requires individuals to file with the state agency before bringing suit. Federal district courts faced with either an ADEA or Title VII case in which a plaintiff had, at some point, first filed a complaint with a state agency, have almost uniformly dismissed the pendent state law claim. *Marin v. New York State Department of Labor*, 512 F.Supp. 353 (S.D.N.Y.1981); *Collins v. Manufacturers Hanover Trust*, 542 F.Supp. 663 (S.D.N.Y.1982); *Koster v. Chase Manhattan Bank*, 609 F.Supp. 1191 (S.D.N.Y.1985); *Klotsche v. New York City*, 621 F.Supp. 1113 (S.D.N.Y.1985); *Hunnewell v. Manufacturers Hanover Trust*, 628 F.Supp. 759 (S.D.N.Y.1986).

Courts have commented on the puzzling outcome this produces:

> Thus, although it may seem anomalous, because of the requirements of ADEA § 633(b), a plaintiff who brings an ADEA claim in federal court cannot bring a New York State claim in either state or federal court.

*Hunnewell*, 628 F.Supp. at 761.

In *Meschino v. International Telephone and Telegraph*, 563 F.Supp. 1066 (S.D.N.Y. 1983), the court discussed the issue but did not rule upon its jurisdiction, pending determination of whether plaintiff's complaint came within the "dismissal for administrative convenience" exception. The court noted:

> Construing the ADEA and the state statute literally, their combined effect seems to be that a plaintiff may not bring a court action asserting both federal and

state age discrimination in employment claims.... [W]e think it appropriate to resolve the question of whether the administrative convenience exception has been met and not attempt, at this point, to determine whether the convergence of state and federal law should be read to produce the anomalous result a literal reading seems to yield.

*Id.* at pp. 1074–75.

I agree with those courts which have found that the interrelationship between federal and state law in this instance yields a result which is somewhat bewildering and neither practical nor, in many cases, equitable. However, there is a distinction between the circumstances in the instant action and those in the cases cited above: Mr. Kaczor did not *himself* file a complaint with the State Division of Human Rights. As discussed above, it is undisputed that the EEOC filed a copy of Mr. Kaczor's charges with the State Division of Human Rights. Plaintiff maintains that this is a crucial distinction. Plaintiff claims that since he did not file the charges with the state agency, he cannot be deemed to have exercised his right of election under New York State Exec.Law § 297(9).

In those cases in which the charges were filed with the state agency by the EEOC, courts have held, as plaintiff urges, that section 297(9) does not preclude court action and have refused to dismiss state law claims on that basis. *Selbst v. Touche Ross & Co.*, 587 F.Supp. 1015 (S.D.N.Y. 1984), and *People v. Holiday Inns*, 656 F.Supp. 675 (W.D.N.Y.1984, Elfvin, J.).

My research has revealed only two New York State court cases in which the plaintiff first filed with the EEOC, after which the EEOC automatically filed his charge with a state human rights agency. In both cases, the plaintiff then sought to bring his claims under NYExec.Law § 296 in state court. Both courts found that, on these facts, NYExec.Law § 297(9) did not mandate dismissal of the claims. *Rodriguez v. Altman & Co.*, NYLJ May 7, 1984, at 14, Col. 2, (Sup.Ct., New York City), and *Scott v. Carter-Wallace*, 511 N.Y.S.2d 767 (Sup. Ct.1986). Both found that the language of section 297(9)—"unless such *person* had filed a complaint"—applies only to those plaintiffs who *themselves* filed a complaint with a state agency.

The ordinary meaning of this subdivision's words does not readily admit any exception to the requirement that before the bar to institution of an action may be said to operate, the aggrieved person must be the one who filed the charge with the Division. Furthermore, the phrase "any person claiming to be aggrieved" has been held to include only the victim of the illegal discriminatory practice.

*Rodriguez, supra* (citations omitted). Both courts also concluded that, when the EEOC automatically files the charge with the state agency, an individual has no choice in the matter, and therefore, it is not a meaningful election of remedies.

This court agrees that the plain language of section 297(9) makes the bar to court action applicable only when the plaintiff himself files with the state agency, and not when a third party (*i.e.*, the EEOC) files on his behalf. However, this conclusion results in yet another anomaly.

The practical distinction between those cases in which the individual files the charge and those in which the EEOC files the charge is slim. The EEOC automatically files charges with the State Division of Human Rights to be of assistance to victims of discrimination, effectively acting as their agent. *See Voutsis*, 452 F.2d at 892. However, the EEOC could have adopted a policy whereby it notified complainants that *they* must make their own filings with a state agency. In that case, individuals from New York would be barred by NYExec.Law § 297(9) from having their state human rights claim heard in court.

The distinction becomes particularly thin when an individual files his charges without assistance of counsel. In many cases, his decision as to whether to file with a state (or local) agency or with the EEOC may be fortuitous, yet could result in his losing the right to have certain claims heard in court. There would be no meaningful election of remedies in either event.

■ Nonetheless, the language of the election of remedies provision is clear. Those courts which have addressed the is-

sue have concluded that a filing with a state agency by the EEOC does not trigger the section 297(9) bar to court action. Given the "anomalous" results when the federal and state requirements are construed together, this court agrees that NYExec.Law § 297(9) should be read narrowly. Since Mr. Kaczor, the aggrieved individual, did not file a charge with the State Division of Human Rights, section 297(9) does not apply to bar this court from hearing his state law claims.

Defendant's motion to vacate the jury verdict awarding Mr. Kaczor damages for emotional distress under New York State Human Rights Law, on the ground that this court lacks jurisdiction over the claim, is denied.

### 3. Motions on Damages

Finally, there were motions related to excessiveness of damages on the federal claim and on the pendent state claim. During argument, the court related to counsel that it appeared from the trial record that there should be a reduction in the amount of verdict on both claims.

On the ADEA claim, the trial record revealed that when Mr. Kaczor was working as a Buffalo Police Officer, he also worked a part-time job. Mr. Kaczor appears to be entitled to some credit for part-time work he would have done had he continued as a Buffalo Police Officer. After he retired, some of the jobs he took were full-time, and he testified that he could not have held some of them had he been employed by the Buffalo Police at that time. Based upon this, the City is entitled to some reduction.

Although the jury was given an opportunity to make a full or partial reduction for each job held, no reduction was made. This was against the weight of the evidence.

On the state claim, the jury awarded plaintiff $200,000.00 for emotional distress. Plaintiff himself testified as to the emotional distress he claimed to have suffered. Under New York law, this is sufficient to support an award for emotional distress. *Cullen, supra,* 442 N.Y.S. at 473, 425 N.E.2d at 861. Nonetheless, it is clear that the evidence in support of his emotional distress award was quite limited, and it certainly may be argued that the jury's award is greatly excessive.

The court believes that it will be to the benefit of both plaintiff and defendants to ernestly attempt to negotiate the money value of these claims. For that reason, these questions are referred to United States Magistrate Edmund F. Maxwell for the purpose of conducting settlement negotiations. If the amount of the award cannot be settled by May 29, 1987, the court shall be notified and a decision will then be made on the merits.

To summarize, defendants' motions for judgment *n.o.v.* on the issues of liability and willfulness are denied. Defendants' motion to dismiss the ADEA claim is denied, as is defendants' motion to dismiss plaintiff's pendent state claim for lack of jurisdiction. The damages issues shall be taken up with Magistrate Maxwell, as set forth above.

So ordered.