**INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS, LOCAL LODGE NO. 967, by its President, William E. McCADDEN, Plaintiff,**

v.

**GENERAL ELECTRIC COMPANY and Powerex, Inc., Defendants.**

No. 88–CV–798.

United States District Court, N.D. New York.

May 24, 1989.

**548**

Knopf & Burka, Washington, D.C., Blitman and King, Syracuse, N.Y., for plaintiff; James R. LaVaute, of counsel.

Bond Schoeneck & King, Syracuse, N.Y., for General Elec.; John Gaal, of counsel.

John A. DeFrancisco, Syracuse, N.Y., for Powerex, Inc.

## MEMORANDUM—DECISION AND ORDER

McCURN, Chief Judge.

On June 22, 1988, the International Association of Machinists and Aerospace Workers Local Lodge No. 967 ("Union") initiated this action in New York State Supreme Court, Cayuga County against defendants General Electric Company ("GE") and Powerex, Inc. ("Powerex"). The complaint alleges that defendants engaged in unlawful age discrimination in violation of New York "Human Rights Law." N.Y.Executive Law § 296.1.(a). GE, with the consent of Powerex, removed this action to federal court on July 22, 1988. GE asserts that removal is proper because the claims in the complaint are preempted by federal law and thus "arise under" federal law for purposes of removal. Plaintiff has now moved for a remand to state court; GE has opposed plaintiff's motion while Powerex has not responded. GE further contends that, if successful in resisting this motion to remand, the National Labor Relations Board has primary jurisdiction over the claims raised in the complaint and that the action should be dismissed for want of jurisdiction.[1]

### I. Background

The plaintiff is Local 967 of the International Association of Machinists and Aerospace Workers. This organization has represented production and maintenance workers employed at a semi-conductor manufacturing facility in Auburn, New York, (the "Auburn facility") since approximately 1953. General Electric Company owned and operated the Auburn Facility until January 1, 1986. During this period the Union and GE were parties to a number of collective bargaining agreements and supplemental agreements including a "Memorandum of Agreement Concerning Pensions and Insurance." The last such agreements were ratified and became effective on July 1, 1985. The Union claims that the collective bargaining agreement ("CBA") it entered into with GE was particularly well suited to the needs of its members, who average over 55 years in age.

This dispute arises out of circumstances surrounding the January 1, 1986, transfer of ownership of the Auburn facility to Powerex, Inc. According to the complaint, Powerex is a joint venture in which GE and Westinghouse Electric Company each own a 45% interest. Mitsubishi Electric Corporation owns a 10% share. As part of the process of forming Powerex, GE contributed the Auburn plant and a facility in Singapore. Westinghouse contributed plants in Youngwood, Pennsylvania; Gurabo, Puerto Rico; and Le Mans, France. All parties to the joint venture are also alleged to have contributed millions of dollars in resources and/or new technologies to Powerex.

When Powerex took control of the Auburn facility it offered employment to all of the persons currently employed at the plant and, apparently, retained most of the supervisory personnel. No members of the Union lost their jobs during or immediately after the transfer in ownership from GE to Powerex. However, Powerex did not adopt the collective bargaining agreement which had been in effect between General Electric

---

**1.** Defendants' moving papers both opposed the motion to remand and sought summary judgment. The summary judgment motion was withdrawn without prejudice. Plaintiff's motion to remand is the only issue presently before the court.

and the plaintiff. The Union alleges that the new employer initially negated many of the benefits contained in the CBA and reduced many others. A new agreement has since been entered into between Local 967 and Powerex. It is asserted that the formation of Powerex placed the Union in a much weaker bargaining position relative to their former situation with GE—with a concomitant loss of many age related benefits in the newly negotiated agreement.

The complaint maintains that as a result of the plant transfer and the new agreement with Powerex "employees at the Auburn facility lost, among other things, one week of vacation per year, five personal or sick days, half of their life insurance, substantial medical coverage, and pension and termination pay rights." Complaint, par. 9. Beyond losing these benefits and seniority rights, many of the bargaining unit members are losing their jobs; at least 43 persons, all over the age of 40, have been laid off, allegedly because Powerex has begun transferring work to its other facilities. The plaintiff believes that the purpose "of the joint venture and work transfers is to close the Auburn Plant without having to pay the plant closing costs to the Auburn work force [as] set forth in the 1985–1988 contract between General Electric and the Union." Complaint, par. 14. The gist of each of plaintiff's claims is that a "determinative factor" in the defendants' business decisions was the age of the Auburn facility's work force and the age related costs associated with their continued employment.

The complaint incorporates the facts and allegations outlined above into six separate causes of action. However, only the first and second of these claims make allegations against GE. In the first cause of action, the Union asserts that GE transferred the Auburn facility to avoid, among other things, paying the bargaining unit members age-related health insurance, life insurance, severance pay, and pension benefits due under the 1985–1988 labor agreement. GE's actions allegedly constituted discriminatory treatment in the terms, conditions, and privileges of employment on the basis of age in violation of § 296.1.(a) of the New York Executive Law.

The second cause of action asserts that GE's sale of the Auburn facility constituted unlawful age discrimination under N.Y. Executive Law § 296.1.(a) due to the disparate impact it had on plaintiff's members "vis-a-vis other General Electric employees engaged in the manufacture of semiconductor products." Complaint, par. 25. The members of the Auburn bargaining unit are alleged to be older on average than the other GE employees who manufacture semiconductor products. In general, the complaint contains no reference to any federal statute or regulation and, on its face, relies solely on the New York Executive Law.

In separate proceedings, the Union filed unfair labor practice charges under § 8(a)(5) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 158(a)(5), with the National Labor Relations Board against GE and Powerex. The Union claimed, among other things, that the changes in the terms and conditions of employment which were initially made by Powerex in a unilateral fashion were prohibited under the NLRA. The NLRA's Office of General Counsel refused to prosecute the Union's claims and dismissed the charges. The basis of the General Counsel's determination was that Powerex was not an "alter ego" of GE and therefore was a "successor" employer who could not be bound to the terms and conditions of the agreement between GE and the Union. 13 AMR 23094, *General Electric Co./Powerex, Inc.* (NLRB Advice Memorandum Case No. 3–CA–13046–2, June 23, 1986).

It appears that approximately 87 members of the Union filed charges with the New York State Division of Human Rights alleging unlawful age discrimination by GE in violation of the Human Rights Law of New York. This is the same statute under which the Union has brought the present action. On the basis of an opinion issued by Sam Singer, the Acting General Counsel of the Division of Human Rights, the claim of at least one Union member, Sarah Penna, was dismissed by an Order dated Octo-

ber 6, 1988, on the ground that it was preempted by the provisions of the Employee Retirement Income Security Act ("ERISA"). The State Human Rights Division concluded the resolution of that dispute lies under federal law.

## II. Discussion

As the basis for removal, General Electric asserts that the Union's claims are preempted by section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, and by section 514 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1144. GE claims that the federal preemption is so complete that the plaintiff's state law claims must be converted into federal causes of action; thereafter, as federal claims they would be subject to removal to federal court under 28 U.S.C. § 1441(a).[2]

### A. The State Age Discrimination Claim

As a preliminary matter it is appropriate to review the elements of an age discrimination claim under New York Executive Law § 296.1.(a). That statute reads in applicable part:

1. It shall be an unlawful discriminatory practice:

(a) For an employer or licensing agency, because of the age, . . . of any individual, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or terms, conditions or privileges of employment.

GE is an employer as defined in § 292.5 of the Executive Law of New York. The Union, which is an unincorporated association, also appears to be a proper party to an age discrimination claim under the terms of Executive Law § 292.1. That section broadly defines "[t]he term 'person' [as] includ[ing] one or more individuals, partnerships, associations, corporations, legal

representatives, trustees, trustees in bankruptcy, or receivers." Such persons may normally bring suit under the Human Rights Laws of New York.

In *Mayer v. Manton Cork Corp.*, 126 A.D.2d 526, 510 N.Y.S.2d 649 (A.D.2 Dept. 1987), the court listed the elements of a *prima facia* case of age discrimination for the *discharge* of an employee under Executive Law § 296.1.(a).

In order to make out a prima facie case of age discrimination the plaintiff must (1) demonstrate that he was a member of the protected class; (2) prove that he was discharged; (3) prove that he was qualified for the position he held; and (4) either (a) show that he was replaced by a person younger than himself; (b) produce direct evidence of discriminatory intent; or (c) produce statistical evidence of discriminatory conduct. Such a showing raises an inference of discrimination which serves to shift the burden to the defendant to produce evidence that the plaintiff's discharge was founded on valid business reasons which were independent of age considerations.

*Id.*, 510 N.Y.S.2d at 650 (citations omitted). The scope of section 296.1.(a) goes beyond discriminatory discharges—applying to age discrimination which affects the compensation, terms, conditions, or privileges of employment. Thus, the second element of the *prima facia* case outlined in *Mayer* may also be satisfied by proof that an individual employee had such items as wages, pensions, vacation time, health care benefits, promotions, or seniority denied or diminished. *See e.g., State Div. of Human Rights v. General Motors,* 107 A.D.2d 1081, 486 N.Y.S.2d 542, 543–44 (A.D.4 Dept.1985); *Kaczor v. City of Buffalo,* 657 F.Supp. 441, 442–46 (W.D.N.Y.1987). Of course, the plaintiff must then go on to prove the other elements of the age discrimination claim.

■ State laws against age discrimination have an important role in the federal enforcement framework under the Age

---

**2.** 28 U.S.C. § 1441(a) provides:

Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be re-

moved by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.* If a grievant resides in a state which has "a law prohibiting discrimination in employment because of age and establishing or authorizing a State authority to grant relief from such discriminatory practice," 29 U.S.C. § 633(b), the grievant may not bring an action in federal court under the enforcement provisions of the ADEA "until he has first resorted to appropriate state administrative proceedings." *Oscar Mayer & Co. v. Evans*, 441 U.S. 750, 753, 99 S.Ct. 2066, 2070, 60 L.Ed.2d 609 (1979). New York, with its own anti-discrimination laws, is such a "deferral state." *See Kaczor v. City of Buffalo*, 657 F.Supp. 441, 445 (W.D. N.Y.1987). However, the ADEA permits grievants to file complaints with state and federal agencies simultaneously. *See Oscar Mayer*, 441 U.S. at 756, 99 S.Ct. at 2072; 29 U.S.C. §§ 626(d) and 633(b). Under the procedural provisions of N.Y. Executive Law § 297.9 a person aggrieved by an unlawful age discrimination practice may seek relief either by direct state court action or by filing a complaint with the State Division of Human Rights. However, a plaintiff may not pursue both avenues of recourse, the remedies being mutually exclusive. *Emil v. Dewey*, 49 N.Y.2d 968, 428 N.Y.S.2d 887, 406 N.E.2d 744 (Ct. App.1980); *Sprott v. Avon Products Inc.*, 596 F.Supp. 178, 184 (S.D.N.Y.1984).

### B. The Well Pleaded Complaint Rule

There is no mention of a federal cause of action on the face of plaintiff's complaint and the parties are not diverse. However, the defendant asserts that the removal of this action to federal court was proper on the alternate grounds that the plaintiff's claims are so completely preempted by provisions of the Labor Management Relations Act or the Employee Retirement Income Security Act that they may be recharacterized as claims "arising under" federal law. Once recharacterized as federal claims the action could be removed to federal court. Removal of this action to federal court under these circumstances is an exception to the "well pleaded complaint" rule. As stated in *Caterpillar Inc. v. Williams:*

Only state court actions that originally could have been filed in federal court may be removed to federal court by the defendant. Absent diversity of citizenship, federal question jurisdiction is required. *The presence or absence of federal question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint.*

482 U.S. 386, 107 S.Ct. 2425, 2429, 96 L.Ed. 2d 318 (1987) (footnotes omitted, emphasis added). The term federal question, for the purposes of removal, generally means that "the *plaintiff's* complaint establishes that the case 'arises under' federal law. '[A] right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action." *Franchise Tax Bd. v. Const. Laborers Vac. Trust*, 463 U.S. 1, 10–11, 103 S.Ct. 2841, 2847, 77 L.Ed. 2d 420 (1983). "If it appears before final judgment that a case was not properly removed, because it was not within the original jurisdiction of the United States district courts, the district court must remand it to the state court from which it was removed. See 28 U.S.C. § 1447(c)." *Id.* at 8, 103 S.Ct. at 2845.

### C. Preemption Under LMRA Section 301

Section 301(a) of the LMRA provides for federal court jurisdiction over alleged violations of collective bargaining agreements. That provision reads:

Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this Act, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a). While the Supreme Court has long held that state courts have concurrent jurisdiction over § 301 claims,

*Charles Dowd Box Co. v. Courtney*, 368 U.S. 502, 506, 82 S.Ct. 519, 522, 7 L.Ed.2d 483 (1962), it is equally clear that both state and federal courts must apply federal common and statutory law when interpreting collective bargaining agreements. The displacement of state law by federal law is generally referred to as federal preemption. *Lingle v. Norge Div. of Magic Chef, Inc.*, — U.S. —, 108 S.Ct. 1877, 1880 & n. 2, 100 L.Ed.2d 410 (1988) (citing *Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 102, 82 S.Ct. 571, 576, 7 L.Ed.2d 593 (1962). The application of federal law to disputes under § 301(a) was necessary to "ensure uniform interpretation of collective-bargaining agreements, and thus ... promote the peaceable, consistent resolution of labor-management disputes." *Lingle v. Norge Div. of Magic Chef, Inc.*, — U.S. —, 108 S.Ct. at 1880. The Court has reasoned that without a uniform federal common law under which § 301(a) actions could be resolved, divergent interpretations under state and federal law would disrupt the bargaining process envisioned by the LMRA as well as prolong contractual disputes once they arose. *See Teamsters v. Lucas Flour Co.*, 369 U.S. at 103–04, 82 S.Ct. at 576–77.

Thus, federal preemption and removal to federal court are two separate legal concepts which are often intertwined. Removal under 28 U.S.C. § 1441(a) means that a case which could have been filed in federal court is taken from state court and brought into federal court. Federal preemption means that state law is displaced by federal law and that the court which is hearing the dispute, be it state or federal, must apply federal law.

Under the preemption doctrine the Court has occasionally gone so far as to re-characterize an action brought by a plaintiff, under state law and in state court, as a claim under § 301(a). Federal law is then applied to resolve the dispute. This is one of the few exceptions to the well pleaded complaint rule. For example, *Avco Corp. v. Machinists*, 390 U.S. 557, 560–61, 88 S.Ct. 1235, 1237–38, 20 L.Ed.2d 126 (1968), was a suit by an employer under a "no strike" clause of a collective bargaining agreement, originally brought in state court under state law. The Court held that the suit could properly be re-characterized as a § 301(a) claim due to the strong federal preemption of suits based upon collective bargaining agreements. Once recharacterized, the action was removable to federal court as a federal claim.

In *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985), the Supreme Court reviewed, by certiorari from the Supreme Court of Wisconsin, a suit by an employee against his employer under Wisconsin tort law for the bad faith handling of an insurance claim. The employee was a member of a union with which the employer, Allis–Chalmers Corporation, had engaged in a collective bargaining agreement. The CBA between the Union and employer incorporated by reference a separately negotiated group health and disability plan which was funded by the employer. The agreement had a provision setting up a grievance procedure to resolve any disputes concerning insurance coverage or payments. *Id.* at 203–04, 105 S.Ct. at 1907. The state court held that the state tort claim was not preempted by federal law. The Supreme Court reversed, finding the employee's claim preempted by § 301(a) of the LMRA because the duty to insure, scope of insurance, and method by which an insurance claim would be processed must be determined by reference to a collective bargaining agreement. *Id.* at 216–19, 105 S.Ct. at 1914–15.

The Court concluded that "when resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim, ..., or dismissed as pre-empted by federal labor-contract law." *Id.* at 220, 105 S.Ct. at 1916. However, the Court noted that "[t]he full scope of the pre-empted effect of federal labor-contract law remains to be fleshed out on a case-by-case basis." *Id.*

In *IBEW, AFL–CIO v. Hechler*, 481 U.S. 851, 107 S.Ct. 2161, 95 L.Ed.2d 791 (1987), a union member brought an action against

her union under Florida tort law claiming that the union had breached its duty to provide the plaintiff with a safe workplace. The union removed the case to federal court, asserting preemption under § 301 and interposing the defense that the claim was barred by the applicable federal statute of limitations. The plaintiff made no objection to the removal of the claim to federal court. *Id.* 107 S.Ct. at 2164–65. In concluding that the claim was preempted by federal labor-contract law the Court stated:

> In order to determine the Union's tort liability, however, a court would have to ascertain, first, whether the collective bargaining agreement in fact placed an implied duty of care on the Union to ensure that [plaintiff] was provided a safe workplace, and, second, the nature and scope of that duty, that is, whether, and to what extent, the Union's duty extended to the particular responsibilities alleged by respondent in her complaint. Thus, in this case, as in *Allis–Chalmers*, it is clear that "questions of contract interpretation ... underlie any finding of tort liability." ... The need for federal uniformity in the interpretation of contract terms therefore mandates that here, as in *Allis–Chalmers*, respondent is precluded from evading the pre-emptive force of § 301 by casting her claim as a state-law tort action.

*Id.* 107 S.Ct. at 2168. However, in both *Allis–Chalmers*, 471 U.S. at 212, 105 S.Ct. at 1912, and *IBEW, AFL–CIO v. Hechler*, 107 S.Ct. at 2167 n. 3, the Court emphasized that "[i]n extending the pre-emptive effect of § 301 beyond suits for breach of contract, it would be inconsistent with congressional intent under that section to preempt state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract." In the present case the defendant, General Electric, relies heavily on *Avco, Allis–Chalmers* and *Hechler* to support their assertion that the plaintiff's claims are so preempted by federal labor-contract law as to be removable to this court.

Preemption and removal under § 301 were thoroughly reviewed by the Supreme Court in *Lingle v. Norge Div. of Magic Chef, Inc.*, —— U.S. ——, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988). According to the Court the "principle of § 301 preemption" is that "if the resolution of a state law claim depends upon the meaning of a collective-bargaining agreement, the application of state law ... is preempted and federal labor law principles—necessarily uniform throughout the nation—must be employed to resolve the dispute." *Lingle*, 108 S.Ct. at 1881. Removal of a claim to federal court along with the federal preemption of that claim has been termed "complete preemption." *Caterpillar Inc. v. Williams*, 107 S.Ct. at 2430.

The Supreme Court has refused, however, to find that a state law claim was preempted when the claims were not founded "directly on rights created by collective-bargaining agreements," or "substantially dependent on analysis of a collective-bargaining agreement." *Id.* 107 S.Ct. at 2431. In *Caterpillar*, for example, the Court held that a state court suit based on individual employment contracts was not preempted even though the plaintiffs were members of a collective bargaining unit and could have brought suit under § 301. The Court determined that resolution of the individual employment contract claims would not involve the interpretation of a collective bargaining agreement and, thus, no federal interest was implicated.

In a similar vein, the Court in *Lingle v. Norge Div. of Magic Chef, Inc.*, —— U.S. ——, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988), addressed the issue of whether a claim, brought by a union member against her employer under Illinois law for the tort of retaliatory discharge, was preempted by § 301(a) of the LMRA. After reviewing the individual elements of the state tort claim it was determined that none of those elements required the Court to interpret any term of the collective bargaining agreement. *Id.* 108 S.Ct. at 1883. To clarify its holding the Court stated:

> In other words, even if dispute resolution pursuant to a collective-bargaining agreement, on the one hand, and state law, on the other, would require address-

ing precisely the same set of facts, as long as the state-law claim can be resolved without interpreting the agreement itself, the claim is "independent" of the agreement for § 301 pre-emption purposes.

*Id.* The Court noted that the conclusion it reached was "consistent both with the policy of fostering uniform, certain adjudication of disputes over the meaning of collective-bargaining agreements and with cases that have permitted separate fonts of substantive rights to remain unpre-empted by other federal labor law statutes." *Id.* at 1884.

As noted above, for a plaintiff to make out a *prima facia* case of age discrimination in employment he must first demonstrate that he is a member of a "protected class." Second, the plaintiff must prove that he was discharged, or suffered some loss or injury concerning the terms, conditions or privileges of employment. Third, he must prove that he was qualified for the position, and fourth, "either (a) show that he was replaced by a person younger than himself; (b) produce direct evidence of discriminatory intent; or (c) produce statistical evidence of discriminatory conduct." *Mayer v. Manton Cork Corp.,* 126 A.D.2d 526, 510 N.Y.S.2d 649, 650 (A.D.2 Dept. 1987); *see e.g., State Div. of Human Rights v. General Motors,* 107 A.D.2d 1081, 486 N.Y.S.2d 542, 543–44 (A.D.4 Dept.1985); *Kaczor v. City of Buffalo,* 657 F.Supp. 441, 442–46 (W.D.N.Y.1987).

An examination of the elements of a prima facia case of age discrimination in employment under New York Executive Law § 296.1.(a) reveals that the resolution of *some* elements of the *prima facia* case would require the interpretation of the collective bargaining agreement that existed between the Union and General Electric, as well as the CBA which is currently in effect between Powerex and the Union. For example, the determination, of past and present terms and conditions of employment, as well as the calculation of damages, if any, would require attention to the provisions of the collective bargaining agreements. However, determinations as to other elements of the age discrimination

claim, such as what constitutes membership in a protected class, what constitutes direct or statistical evidence of discriminatory conduct, as well as the existence and extent of a duty not to discriminate in employment on the basis of age, would rest on the application of state law.

Accordingly, the resolution of plaintiff's state age discrimination in employment claim necessarily involves the application of federal law to interpret the provisions of the collective bargaining agreements. However, other elements of the age discrimination claim exist and are evaluated solely under state law. This situation is governed by the discussion in *Lingle,* 108 S.Ct. at 1885 n. 12. There the Court noted the "general proposition" that "a state law claim may depend for its resolution upon both the interpretation of a collective-bargaining agreement and a separate state law analysis that does not turn on the agreement. *In such a case, federal law would govern the interpretation of the agreement, but the separate state law analysis would not be thereby pre-empted.*" *Id.* 108 S.Ct. at 1885 n. 12. Under this "general proposition" there remains significant portions of the plaintiff's claims against GE which are not preempted by federal law.

Since the plaintiff's claims are only partially preempted by federal law it would not be proper to recharacterize them as claims 'arising under' federal law. This is especially so because the thrust of the causes of action in the complaint have to do with age discrimination rather than the breach of a duty which stems from the provisions of a collective bargaining agreement. In short, the heart of the plaintiff's claims against General Electric arise under the laws of the State of New York and are not generally of the sort which may be negotiated away at a bargaining table. It cannot be said that such a claim is, in reality, one under § 301 of the LMRA.

Given the dictates of the "well pleaded complaint" rule, as discussed above, it would be incorrect to permit removal of this action to federal court. Therefore, this

court holds that the claims alleged by the plaintiff Union against General Electric are not "completely preempted" by § 301(a) and thus cannot be recharacterized as claims under federal law removable to this court. Under these circumstances this action, unless it appears that the claims are otherwise removable, must be remanded to state court.

It is this court's belief that this ruling is "consistent both with the policy of fostering uniform, certain adjudication of disputes over the meaning of collective-bargaining agreements and with cases that have permitted separate fonts of substantive rights to remain unpre-empted by … federal labor law statutes." *Lingle*, 108 S.Ct. at 1884. This, because "in extending the pre-emptive effect of § 301 beyond suits for breach of contract, it would be inconsistent with congressional intent under that section to pre-empt state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract." *Allis–Chalmers*, 471 U.S. at 212, 105 S.Ct. at 1912; *IBEW, AFL–CIO v. Hechler*, 107 S.Ct. at 2167 n. 3. The prohibition against employment discrimination on the basis of age which is found in New York Executive Law § 296.1.(a) is such an "establish[ed] right" which is not subject to § 301 removal.

### D. Preemption Under ERISA

■ GE also asserts that the Union's claims are so completely preempted by the Employee Retirement Income Security Act (ERISA) that they must be recharacterized as federal claims removable to federal court. Given certain narrow circumstances the Supreme Court has found a plaintiff's state law claim to be both preempted and completely displaced by ERISA's civil enforcement provisions. After such a finding the claim may be deemed to be federal in character so that removal is possible. *See Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 107 S.Ct. 1542, 1548, 95 L.Ed.2d 55 (1987). This, is another exception to the 'well pleaded complaint' rule. However, state courts have concurrent jurisdiction to hear ERISA claims so "Federal pre-emption is ordinarily a federal defense to the plaintiff's" action under state law. *Id.* 107 S.Ct. at 1546.

As has been outlined in numerous Supreme Court cases, Congress enacted the broad reaching provisions of ERISA:

> to promote the interests of employees and their beneficiaries in employee benefit plans…. The statute does not mandate that employers provide any particular benefits. But for employers that do provide certain pension and welfare benefits, ERISA imposes participation, funding, and vesting requirements, 29 U.S.C. §§ 1051–1086, and sets various uniform standards, including rules concerning reporting disclosure, and fiduciary responsibility. 29 U.S.C. §§ 1021–1031, 1104–1114.

*Aetna Life Insurance Co. v. Borges*, 869 F.2d 142, 144 (2nd Cir.1989).

Congress has provided for the comprehensive civil enforcement of ERISA's requirements.[3] 29 U.S.C. § 1132(a). At the

---

**3.** 29 U.S.C. § 1132(a) provides:

"A civil action may be brought—
(1) by a participant or beneficiary—
(A) for the relief provided for in subsection (c) of this section [concerning requests to the administrator for information], or
(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;
(2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title [breach of fiduciary duty];
(3) by a participant, beneficiary or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of

the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan;
(4) by the Secretary, or by a participant, or beneficiary for appropriate relief in the case of a violation of 1025(c) of this title [information to be furnished to participants];
(5) except as otherwise provided in subsection (b) of this subsection, by the Secretary (A) to enjoin any act or practice which violates any provision of this subchapter, or (B) to obtain other appropriate equitable relief (i) to redress such violation or (ii) to enforce any provision of this subchapter;
(6) by the Secretary to collect any civil penalty under subsection (i) of this section." (As set forth in *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S.

same time the Act also includes a broad preemption provision. "Section 514(a) of ERISA, 29 U.S.C. § 1144(a), preempts '*any and all State laws* insofar as they may now or hereafter *relate to* any employee benefit plan' covered by ERISA." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 91, 103 S.Ct. 2890, 2897, 77 L.Ed.2d 490 (1983) (emphasis added). However, "[s]tate laws regulating insurance, banking, or securities are exempt from this pre-emption provision, as are generally applicable state criminal laws.... 29 U.S.C. § 1144(d), moreover, provides that '*[n]othing in this title shall be construed to alter, amend, modify, invalidate, impair, or supersede any law of the United States* ... or any rule or regulation issued under any such law.'" *Id.*, 103 S.Ct. at 2897 (emphasis added).

The Supreme Court has examined the scope of ERISA preemption on several occasions. The court has stated that 'the express pre-emption provisions of ERISA are deliberately expansive, and designed to "establish pension plan regulation as exclusively a federal concern."' ... The words 'relate to' in [29 U.S.C. § 1144(a)] are to be interpreted broadly; ERISA does not preempt only state laws specifically designed to affect employee benefit plans or dealing with the subject matters covered by ERISA—reporting, disclosure, fiduciary responsibility, and the like.

*Aetna Life Insurance Co. v. Borges*, 869 F.2d 142, 144 (2nd Cir.1989).

While other federal laws were not affected by the passage of ERISA most state laws were preempted to the extent that they related to ERISA covered employee benefit plans. The rationale for this strong statutory preemption provision was summarized in *Pilot Life Ins. Co. v. Dedeaux:*

[ERISA's] comprehensive civil enforcement scheme ... represents a careful balancing of the need for prompt and fair claims settlement procedures against the public interest in encouraging the formation of employee benefit plans. The policy choices reflected in the inclusion of

41, 107 S.Ct. 1549, 1555 n. 3, 95 L.Ed.2d 39 (1987), so as to include explanatory parentheti-

certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA. "The six carefully integrated civil enforcement provisions found in [29 U.S.C. § 1132(a)] ... provide strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly."

481 U.S. 41, 107 S.Ct. 1549, 1556, 95 L.Ed. 2d 39 (1987) (citing *Massachusetts Mutual Life Ins. Co. v. Russell*, 473 U.S. 134, 146, 105 S.Ct. 3085, 3093, 87 L.Ed.2d 96 (1985)).

It is clear that ERISA covered employee benefit plans can emerge from a collective bargaining agreement and that suits under state law addressed to benefit payments under such a plan can be preempted by ERISA. *See Alessi v. Raybestos–Manhattan, Inc.*, 451 U.S. 504, 525–26 & n. 23, 101 S.Ct. 1895, 1907–08 & n. 23, 68 L.Ed.2d 402 (1981). Under ERISA "[t]he term 'employee benefit plan' is defined as including both pension plans and welfare plans." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. at 90–91, 103 S.Ct. at 2896. "An 'employee pension benefit plan' provides income deferral or retirement income ... 29 U.S.C. § 1002(2). An 'employee welfare benefit plan' includes any program that provides benefits for contingencies such as illness, accident, disability, death, or unemployment.... 29 U.S.C. § 1002(1)." *Id.* at 91 n. 5, 103 S.Ct. at 2896 n. 5.

Under the above definitional sections it is clear that the claims asserted against GE, may at least in part, relate to ERISA covered benefits. In paragraph 18 of the complaint it is alleged that "by creating Powerex, General Electric was able to avoid, among others, the costs of health insurance, life insurance, severance pay, and pension benefits contained in the 1985–1988 collective bargaining agreement between General Electric and the Union." How-

cals).

ever, the complaint also incorporates into each cause of action allegations that Union members suffered wage reductions under certain conditions (complaint par. 9), lost vacation time, *id.*, lost seniority rights upon transfer to a new plant (complaint par. 12), and even lost their jobs (complaint par. 13). Benefits such as these generally are *not* covered by ERISA and therefore are not preempted by its provisions. For example, in *Shaw v. Delta Air Lines, Inc.*, 463 U.S. at 97 n. 17, 103 S.Ct at 2900 n. 17, the Court found New York State Human Rights Law, Exec. Law § 290 *et seq.*, to be "unaffected" by the provisions of ERISA "insofar as it prohibits employment discrimination in hiring, promotion, salary, and the like."

### E. Removal Under ERISA

Even assuming, for the purposes of this motion alone, that the plaintiff's claims are preempted by provisions of ERISA this court is not required to find that GE's removal of this action was proper. GE argues that removal should be permitted because plaintiff's claims, though couched as state age discrimination claims, are properly recharacterized as causes of action under two independent provisions of ERISA. First, it is asserted that the Union's state law claims are, in fact, ERISA discrimination claims under 29 U.S.C. § 1140. This section provides in applicable part:

It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or *discriminate* against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan, ..., or *for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan*.... (emphasis added).

It is clear that the plaintiff is seeking to obtain benefits, allegedly covered by ERISA, which they believe were denied on the impermissible ground of age discrimination.

Secondly, GE asserts that the Union's claims purport to state causes of action under ERISA section 502(a)(1)(B), which reads in applicable part:

A civil action may be brought—
(1) by a participant or beneficiary—
(B) to recover benefits due to him under the terms of the plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

29 U.S.C. § 1132(a)(1)(B). GE argues that the plaintiff's state law claims fall squarely within the above provision on the grounds that the union's members are plan participants who are seeking to recover benefits under an ERISA covered employee benefit plan. GE asserts that either of the above provisions will serve as a basis for removal.

As noted earlier, "Federal pre-emption is ordinarily a federal defense to the plaintiff's suit." *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987). This is due to the operation of the 'well pleaded complaint' rule. In *Metropolitan* the Court found that a claim brought under Michigan law, to obtain ERISA covered benefits which the plaintiff claimed were denied contrary to the terms of the employee benefit plan, was both preempted by ERISA *and* removable to federal court. The Court held that the claim must properly be characterized as an action "arising under" federal law since it was a claim which the Congress had intended to be brought only under the civil enforcement provision of ERISA, 29 U.S.C. § 1132(a), and that Congress specifically intended such state law claims to be removable in contravention of the well pleaded complaint rule. *Id.* 107 S.Ct. at 1547–48. Removal was permitted, even though the plaintiff's complaint alleged solely state causes of action, because "Congress has *clearly manifested an intent* to make causes of action *within the scope* of the civil enforcement provisions of [29 U.S.C. § 1132(a)] removable to federal court." *Id.* 107 S.Ct. at 1548 (emphasis added).

This court holds, however, that the present action is *not* removable notwithstanding the strong preemptive effect of

ERISA. The basis for denying removal here lies in the difference between preemption of state law under ERISA and removal to federal court under ERISA. Plaintiff's claims are brought under New York Human Rights Law, Executive Law § 296.1.(a), alleging age discrimination on the part of defendants. The specific claims asserted by the plaintiff may well have been brought under the federal Age Discrimination in Employment Act. 29 U.S.C. 621 *et seq.* However, these claims could not have been brought under either the civil enforcement provision of ERISA, 29 U.S.C. § 1132(a), or as a claim for discrimination under 29 U.S.C. § 1140. As such, the state claim is not within the scope of ERISA.

The terms of 29 U.S.C. § 1132(a) simply do not, and were not intended by Congress, to include age discrimination as a basis for a cause of action. Although 29 U.S.C. § 1140 does state a prohibition against discrimination, it is clear that the discrimination which was sought to be prohibited by § 1140 was the disparate treatment of individual participants and beneficiaries as against other persons enrolled in the ERISA covered plan. It would be a strained reading to interpret § 1140's use of the word "discriminate" as incorporating all the federal civil rights laws. In *Shaw v. Delta Air Lines,* the Court discussed the legislative history of ERISA as it related to employment discrimination. The Court stated:

> During the floor debates, Senator Mondale questioned whether the Senate bill should be amended to require nondiscrimination in ERISA plans. Senator Williams replied that no such amendment was necessary or desirable. He noted that Title VII already prohibited discrimination in benefit plans, and stated: "I believe that the thrust toward centralized administration of nondiscrimination in employment must be maintained. And I believe this can be done by the Equal Employment Opportunity Commission

under terms of existing law." 119 Cong. Rec. 30409 (1973). Senator Mondale, "with the understanding that nondiscrimination in pension and profit-sharing plans is fully required under the Equal Employment Opportunity Act," *id.,* at 30410, chose not to offer a nondiscrimination amendment. This colloquy was repeated on the floor of the House by representatives Abzug and Dent. 120 Cong.Rec. 4726 (1974).

463 U.S. at 104, 103 S.Ct. at 2903–04.[4] This court does not accept GE's argument that the plaintiff's age discrimination claims are within the scope of § 1140 due to the inclusion of the word "discriminate" in that provision. Rather, claims based on age discrimination are to be brought under the ADEA—a statute which is not preempted by ERISA. The federal procedure for bringing an age discrimination claim is complicated, including procedures such as EEOC investigation, arbitration and enforcement, deferral to state agencies authorized to handle such disputes, as well as court enforcement. *See generally Oscar Mayer & Co. v. Evans,* 441 U.S. 750, 99 S.Ct. 2066, 60 L.Ed.2d 609 (1979). Section 1140 of ERISA was not intended to circumvent the federal framework for handling allegations of age discrimination.

The Supreme Court has held that "ERISA pre-emption, without more, does not convert a state claim into an action arising under federal law" for the purposes of removal to federal court. *Metropolitan Life Ins. Co. v. Taylor,* 107 S.Ct. at 1547 (citing *Franchise Tax Board v. Construction Laborers Vacation Trust,* 463 U.S. 1, 25–27, 103 S.Ct. 2841, 2854–56, 77 L.Ed.2d 420 (1983)). The ADEA, as a federal antidiscrimination statute, stands as a *separate* federal enforcement provision for the purpose of prohibiting age discrimination and was not by reference incorporated into ERISA. *See Shaw,* 463 U.S. at 103–05, 103 S.Ct. at 2903–04. In his brief concurring opinion Justice Brennan emphasized the

---

**4.** The similarities between the enforcement provisions of Title VII of the federal Civil Rights Act and the federal Age Discrimination is Employment Act (ADEA) were thoroughly reviewed

in *Oscar Mayer & Co. v. Evans,* 441 U.S. 750, 754–58, 99 S.Ct. 2066, 2071–73, 60 L.Ed.2d 609 (1973).

"narrow" holding of the Court in *Metropolitan* concerning the scope of removal. The concurrence stressed that "our decision should not be interpreted as adopting a broad rule that *any* defense premised on congressional intent to preempt state law is sufficient to establish removal jurisdiction." *Metropolitan*, 107 S.Ct. at 1548. Rather, "In future cases involving other statutes the prudent course for a federal court that does not find a *clear* congressional intent to create removal jurisdiction will be to remand the case to state court." *Id.*

## III. Conclusion

In conclusion, this court holds that defendant GE's removal of this action to federal court on the grounds of federal preemption of the plaintiff's claim by § 301 of the Labor Management Relations Act and/or the Employee Retirement Income Security Act was not proper. Therefore, this court lacks jurisdiction to consider any of the other issues raised in defendant General Electric's litigation papers including GE's assertions that this action is subject to the exclusive jurisdiction of the National Labor Relations Board. This case is remanded back to the New York State Supreme Court, Cayuga County pursuant to 28 U.S.C. § 1447(c).

IT IS SO ORDERED.